**Kyriaki Cleo KYRIAZI, Individually and on behalf of all those similarly situated**

**v.**

**WESTERN ELECTRIC COMPANY; Ralph Boyd, individually and in his capacity as agent for Western Electric and Fred Wilser, individually and in his capacity as agent for Western Electric, James Snyder, Robert Armstrong and S. "Teddy" Liu, first name of last named defendant fictitious, real first name unknown to plaintiff.**

**Appeal of Helen MILLER, Dorothy Goodman, Helen Witz, Jeannette Scott, Clarice Phillips, Sharon Caines, Barbara R. Gaglio, Jeanne DeMasi, Joyce Lynn, Loretta Harris, and Joanne Bonfante, on their own behalfs and on behalf of others similarly situated, petitioners.**

**No. 80–2417.**

United States Court of Appeals, Third Circuit.

Argued March 19, 1981.

Decided April 30, 1981.

As Amended May 12, 1981.

Oliver Lofton (argued), Lofton & Lester, Newark, N. J., for appellants.

S. Joseph Fortunato (argued), Pitney, Hardin & Kipp, Morristown, N. J., for Western Elec. Co., Inc.; George V. Cook, Joe Ramirez, Lawrence M. Joseph, New York City, of counsel.

Judith P. Vladeck (argued), Vladeck, Elias, Vladeck & Engelhard, P. C., New York City, for Kyriaki Cleo Kyriazi.

Before SEITZ, Chief Judge, and GIBBONS and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

GIBBONS, Circuit Judge.

In a class action alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, Pub.L. 88–352, 78 Stat. 253 (codified at 42 U.S.C. §§ 2000e et seq. (1976)), eleven class members appeal from two orders overruling their objections to a proposed settlement of the action.[1] Their objection is that under the terms of the settlement they are, by virtue of an earlier order, excluded from obtaining a back pay award out of the settlement fund. The order to which they object was made prior to the settlement, on February 21, 1979, after a trial on liability in which the trial court found that the defendant Western Electric Co., Inc. (Western) had at its Kearny, New Jersey Works engaged in a pattern or practice of sex discrimination.[2] We affirm the district court's order.

## I

Prior to the trial on liability issues, the trial court had certified the action as a Fed.R.Civ.P. 23(b)(2) class action, including in the class:

all females who are now or at any time since June 9, 1971 have been employed by defendant Western Electric Company, or who sought employment with said company during the pendency of this suit, at the Kearny Works organization.

Order of July 16, 1975. No question is raised in this appeal as to the appropriateness of the class determination. After finding liability the trial court fashioned procedures for adjudicating the claims of class members for monetary and other individual relief.[3] In the February 21, 1979 order it fashioned detailed procedures under which special masters would hear and report on

---

1. The trial court in each order expressly determined that there was no just reason for delay in entering final judgment on those objections. See orders of Aug. 11, 1980. A final order approving the settlement was filed October 1, 1980, and no other class members have appealed from that order.

2. The liability determination is reported. 461 F.Supp. 894 (D.N.J.1978).

3. The opinion fashioning the procedures for adjudicating claims for individual relief is reported. 465 F.Supp. 1141 (D.N.J.1979).

claims to hiring, promotion, transfer, training, testing opportunities, retroactive seniority, priority hiring, and back pay. In this appeal no objection is made to those procedures except in two respects.

The February 21, 1979 order provides:

2. This Court has ordered that class members be notified of their eligibility to present claims and participate in hearings before the Special Masters pursuant to this Order of Reference by a "Notice to Class" approved by this Court. The Notice requires all class members who seek to pursue their claims to fill out a "Proof of Claim" form, approved by this Court, certifying in writing that they are members of the class and that they will pursue their claims. It also requires the class members to answer questions concerning each claim. These Proof of Claim forms must be filed with the Clerk of the Court not later than April 9, 1979.

3. The Special Masters are directed to exclude from consideration those females who do not file Proofs of Claim forms within the time provided, unless applicant shows good cause which shall not include neglect.

The Court approved notice to the class members by mail, by newspaper publication, by plant meetings, and by posting on plant bulletin boards. No question is raised in this appeal as to the adequacy of the means chosen to bring the notice to the attention of potential claimants. As to content, the notice advised that a contested class action was pending in which Western had been found to have discriminated against women as a group in hiring, promotion, layoffs, transfer into Kearny, discharge, participation in job training programs and opportunities for testing. The notice continued:

There will be soon a second stage, "Stage II", at which time the Court will determine the damages and other relief which it will award to individual women. If you are or were at any time since June 9, 1971 an employee of Western, or if you ever applied for a position at Western, you may be entitled to certain benefits, including monetary payments. The "Stage II" proceedings will determine this question. At these "Stage II" proceedings, any eligible woman will be presumed to have been discriminated against. It will be Western's duty to show that it did not deny a woman employment opportunities because of her sex. If Western fails to demonstrate this, that woman will be entitled to recovery, which may include back pay and reinstatement.

If you wish to be considered, you must fill out the enclosed form. Your claim will not be considered if you do not do so and return the form by April 2nd, 1979. If you do fill out the form, you may be required, with no cost to yourself, to participate in court proceedings. You will be furnished an attorney without cost to you. That attorney will be Judith Vladeck, Attorney for plaintiff Kyriazi. If you prefer, you may retain an attorney of your own choosing. If you wish further information, you may contact the attorney for the plaintiff, Judith Vladeck, at (212) 354–8330.

465 F.Supp. at 1149.

The eleven appellants, and many other class members, failed to file a claim by April 2nd, 1979. The trial court rejected contentions that in each instance their failure to do so was justified by good cause within the meaning of paragraph 3 of the February 21, 1979 order.[4] On appeal, however, their principal contentions are (1) that the "opting in" procedure of the February 21, 1979 order, requiring absent class members to submit timely proofs of claim, unduly limited Western's liability to the class in violation of Fed.R.Civ.P. 23, and (2) that, in any event, the notice they were given was constitutionally deficient.

These contentions are addressed to an order entered during the contested stage of a Rule 23(b)(2) class action. They bear upon the subsequent settlement of that action, because under the terms of that settle-

---

4. *See* Part IV, *infra*.

ment no individual relief, monetary or otherwise, will be available to class members who failed to file a claim in compliance with the February 21, 1979 order. The validity of that order, and the adequacy of the notice which was given under it, are not, however, affected by the fact of settlement, for had the case proceeded to a litigated final judgment, the failure to file a claim would by its terms likewise have barred individual relief.

One other aspect of the settlement bears mentioning. Notice of a proposed settlement was given pursuant to Rule 23(e) to all class members, including those who had failed to file claims for individual relief. The settlement provides for a special affirmative action program of potential benefit to all class members, including the eleven appellants. No question is raised in their appeal either about the adequacy of the Rule 23(e) notice of proposed settlement or about the prospective injunctive relief provided for the class.

We are left, therefore, with two narrow questions. The first is whether in a contested Rule 23(b)(2) class action the court may bar claims for individual injunctive or monetary relief on behalf of class members who failed to file timely proofs of claim. The second is whether, assuming such an "opting in" requirement is authorized, the content and clarity of the notice given here was sufficient to satisfy due process.

## II

The proof of claim procedure employed by the district court was not novel. The consensus among courts and commentators is that such an inquiry after a judgment establishing liability is not prejudicial and can serve as an essential aid in the efficient control of a complex class action suit. By providing the judge with a realistic estimate of potential claims and their amount,

such submissions facilitate trial scheduling and settlement negotiations. *See* Wright & Miller, 7A Federal Practice & Procedure ¶ 1787 (1972); *B & B Investment Club v. Kleinert's Inc.*, 62 F.R.D. 140, 148–49, 150–51 (E.D.Pa.1974); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452 (E.D.Pa.1968). Utilization of the procedure has been approved expressly by courts of appeals as a valid exercise of the trial court's discretion under Rule 23(d)(2),[5] both in (b)(3)-type class actions, *see, e. g., Robinson v. Union Carbide Corp.*, 544 F.2d 1258 (5th Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977), and, more pertinently, in (b)(2)-type class actions similar to the instant one. *See, e. g., Sledge v. J. P. Stevens & Co., Inc.*, 585 F.2d 625, 652–53 (4th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979); *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 448–49 (5th Cir. 1973).

Notwithstanding such precedents, appellants attack the proof of claim procedure as an impermissible burden in this case. Relying on Rule 23(c)(2) which requires use of an opting out procedure in (b)(3) class actions, they argue that where individualized relief is made available, the initial notice to absent members of a class may not operate to exclude individual small claims based on a claimant's failure to come forward. Only individuals who affirmatively opt out may be excluded, while those who "sit on their rights" are protected.

To survey the merits of this argument, we begin by examining the features of a Rule 23(b)(2) action, since the class in which appellants claim membership was certified under that provision. Rule 23(b)(2) provides for class actions when

the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corre-

---

**5.** (d) *Orders in Conduct of Actions.* In the conduct of actions to which this rule applies, the court may make appropriate orders: . . . (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some

or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action. . . .

sponding declaratory relief with respect to the class as a whole.

A class action seeking declaratory and injunctive relief from a pattern or practice of employment discrimination in violation of Title VII is obviously the paradigm of a Rule 23(b)(2) class action. Indeed, appellants do not contend that the scope of the prospective injunctive relief which is embodied in the settlement should not bind the entire class and thus protect Western from claims for broader relief. They recognize, moreover, that if the case falls within Rule 23(b)(2), class members are not entitled to notice of the pendency of the action and may not opt out; subsection (c)(2) mandates such notice and opt out procedures only for class actions maintained under Rule 23(b)(3), in which the interests of class members are heterogeneous but common questions of law and fact predominate. What appellants in effect contend, however, is that in a Rule 23(b)(2) action such as the instant one, prayers for individualized relief such as back pay or adjustment of seniority cannot be tried without adherence to the notice and opting out features of Rule 23(b)(3).

Rule 23 does not deal specifically with what may be called the "hybrid" class action seeking both classwide and individual relief. The rule arguably could be construed to make (b)(2) and (b)(3) class actions mutually exclusive on the basis of the type of relief sought. We have already rejected that rigid construction in *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 252–53 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). There this court refused to require notice and an opportunity to opt out for absent members in a (b)(2) action, even after the dominant relief sought no longer was principally injunctive, but instead solely monetary. Moreover, we wrote:

> Liberty Mutual also contends that if the requirements of both (b)(2) and (b)(3) are met, the court should certify the class under (b)(3) to provide the procedural protections, namely notice and opting out, which (b)(3) affords members of the class. Virtually every class action meeting the

requirements of 23(b)(2) will also meet the less severe requirements of 23(b)(3). *Van Gemert v. Boeing Company*, 259 F.Supp. 125, 130 (S.D.N.Y.1966). If the actions are classified under (b)(3), members of the class could elect to opt out and thereby not be bound by the judgment. This would permit the institution of separate litigation and would defeat the fundamental objective of (b)(2), to bind the members of the class with one conclusive adjudication. *Van Gemert v. Boeing Company, supra* at 130–131. As discussed above, the procedural protections of (b)(3), opting out and notice, are necessary because of the heterogeneity of the (b)(3) class. They are unnecessary for the homogeneous (b)(2) class.

> The recent Supreme Court decision in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), does not support the Company's contention. *Eisen* does not extend the (b)(3) notice requirement to (b)(2) actions, nor to actions maintainable under either (b)(2) or (b)(3). We therefore agree with the *Van Gemert* principle that an action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3) which serve no useful purpose under (b)(2). This principle has been widely adopted in the federal courts. *See* Moore, *supra* ¶ 23.31[3] and cases cited therein. (footnote omitted).

Having determined that a hybrid class action should be treated as a (b)(2) class action, *Wetzel* went on to hold expressly that a judgment in favor of the defendant in such a proceeding can bar future actions by individual class members, even absent notice, so long as the standards for adequacy of representation laid down in *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940) have been met. 508 F.2d at 256–57. If an unnotified plaintiff of the class could thus be bound by an adverse class action judgment, it followed that due process did not require receipt of a pre-judgment opportunity to opt out.

The issues in *Wetzel*, however, were presented at an early stage in the trial, when the defendant might still have prevailed on the merits. It is clear that once liability against the defendant has been found, some appropriate notice must be given to the class members of their opportunity to obtain individual relief. The appellants urge that the *Wetzel* interpretation of Rule 23 be reconsidered, at least in these circumstances where a classwide violation has already been found, and all that remains is determination of relief to individual class members. The policy considerations which prompted the recognition of hybrid (b)(2) actions, however, apply at least as strongly at that stage of the proceedings as in the pre-liability stage. The strong interest of the judiciary in maximizing the res judicata effect of a class action judgment is undiminished.[6] The interest of the defendant in disposing of all claims in one action still remains. And so long as conflicting interests do not arise among the class members with respect to relief,[7] there is no reason why they should have a greater opportunity to opt out of a class action after a classwide liability determination than before. Indeed, in many respects sound policy suggests that individual class members should be less free to opt out of a class action following a classwide liability determination against a defendant than before. If, following an interlocutory determination of classwide liability, a defendant could not be assured of a judgment disposing both of prospective injunctive and declaratory relief and of retrospective individual relief, the incentive to dispose of the entire matter by a negotiated settlement will be substantially reduced.

Appellants respond by stressing the concern reflected in Rule 23 for facilitating the aggregation of small claims. That policy is thwarted, they say, by a procedure which excludes, rather than includes, claimants who fail to take affirmative steps to participate. However, while the interest that a plaintiff may have in aggregating small claims is important, it is not of constitutional significance,[8] and we feel that interest is adequately served in a (b)(2) case by the discretionary power given to the trial court in Rule 23(d)(2) to "make appropriate orders"

> requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in that action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, *to intervene and present claims or defenses, or otherwise to come into the action....* (emphasis added).

We do not believe it to be an abuse of discretion for the court to require, in effect, a simple "show of hands" so that it can determine how many absent class members are interested in presenting claims, especially when an affirmative proof of claim would be necessary at *some* point, if not now. Regardless of whether the case proceeds as a (b)(2) or a (b)(3) action, individual relief usually must respond to harm actual-

---

6. Cf. *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 257 n.142 (5th Cir. 1974), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979), *quoting* Davidson, *'Back Pay' Awards Under Title VII of the Civil Rights Act of 1964*, 26 Rutgers L.Rev. 741, 741–42 (1973):

> While questions as to back pay period and rate may not be identical with respect to all members of a class, they may be determined from the same source of evidentiary data: the employer's personnel records and practices. It would doubtless be economical to consider these questions with respect to all class members at the same time. Furthermore, requiring separate actions for back pay

would burden courts and counsel alike with duplicative tasks and repetitive paperwork.

7. *See, e. g., Sosna v. Iowa*, 419 U.S. 393, 403 n.13, 95 S.Ct. 553, 559, n.13, 42 L.Ed.2d 532 (1975).

8. Any due process standard underlying Rule 23(b)(3)'s pretrial opt out procedure derives chiefly from the interest of defendants in mutuality of estoppel by judgment, rather than the interest of class members in controlling the litigation. *See Katz v. Carte Blanche Corporation*, 496 F.2d 747, 758–59 (3d Cir.) (en banc), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974).

ly suffered by individual class members. To accomplish and limit such individual relief, the trial court must request from class members the facts of their individual claims.

The post-liability context may also allay some of the concern which influenced the framers of Rule 23 to prefer an opting out procedure for use in the pre-liability context: passivity among absent members is less likely to be a problem where liability is already established, the time of actual recovery is less remote, and the incentive for participation thus enhanced. We need not determine whether this is universally true; what matters is that the district court is in a position to assess this and similar factors bearing upon the choice of an opting in or opting out procedure.

■ Thus we are convinced that the *Wetzel* construction of Rule 23, which permits hybrid class actions involving claims for both classwide and individualized relief to proceed as Rule 23(b)(2) actions, is sound. We join those courts which have held that the trial court is not obligated under such circumstances to permit individual class members to opt out. *See, Sledge v. J. P. Stevens & Co., Inc., supra; Bing v. Roadway Express, Inc., supra.*

### III

■ Nothing we have said heretofore diminishes the fact that once liability against the defendant has been found, some appropriate notice must be given to the class members of their opportunity to obtain individual relief. The rule governing such notice is Rule 23(d)(2). The discretion vested in the trial court by this rule is considerable, but not unlimited. If the court fashions a notice which makes the request insufficiently specific for lay comprehension, or which otherwise imposes undue burdens of response on individual class members, an abuse of discretion may be found. *See Robinson v. Union Carbide Corp.,* 544 F.2d 1258, 1265 (5th Cir. 1977) (Wisdom, J., concurring), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977). Moreover, to satisfy due process, the notice,

like any other affecting substantial rights, must be sufficiently informative and give sufficient opportunity for response, to satisfy due process. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ Judged by the foregoing standards, the notice procedure in the instant case was adequate. It informed the class members that Western had been found to have discriminated against women. As suggested by Rule 23(d)(2), it told them "the proposed extent of the judgment" by the language "[t]here will soon be a second stage, at which time the Court will determine the damages and other relief which it will award to individual women." Plainly this informed lay readers that the extent of individual liability would be determined in the pending action. The notice advised unequivocally:

> If you wish to be considered, you must fill out the enclosed form. Your claim will not be considered if you do not do so and return the form by April 2nd, 1979.

The appellants contend that as a matter of due process this last quoted language is inadequate, because it does not say, as well, "and if your claim is not considered now you will be barred from suit later." Such a reiteration would do no harm and might, indeed, improve the notice. In light, however, of the clear announcement that "the Court will determine the damages and other relief which it will award to individual women," and the emphatic warning that no consideration will be given to late filers, such reiteration was not mandatory as a matter of due process. If appellants had questions or desired further information, they were free—indeed encouraged by the notice—to call the attorney for the class. Under these circumstances, choosing the form of notice relied upon was an appropriate exercise of discretion. The class members were informed of their opportunity to have individual claims considered, but only if they took the clearly specified simple step of filing a claim in order to receive individual relief. The due process clause does not require more.

The appellants, relying on *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979), mount a somewhat ingenious, but misdirected attack on the court's requirement for filing a proof of claim. They would have us treat the February 21, 1979 order and notice as if they required opting in to a settlement before class members could exercise the right to object to it or seek appellate review. The *Pettway* court held that it was an abuse of discretion to require that class members opt in to a settlement before a final determination of its propriety is made. The *Pettway* court was dealing with a Rule 23(e) problem of notice of settlement. We are not. The appellants were foreclosed not by the terms of the settlement, but by the terms of the February 21, 1979 order, which was made by the court in the course of the action some 16 months before the ultimate settlement was even proposed. There is no occasion to consider, in this case, what form of notice or proof of claim is appropriate for participation in a settlement, for the appellants' claims were barred while liability to individuals was still under dispute and potentially thousands of adjudications had to be managed. At that stage, whether it be a hybrid Rule 23(b)(2) action or a pure Rule 23(b)(3) action, some form of proof of claim procedure is a patent necessity.

## IV

■ Appellants' final contention, advanced on their own behalf and on behalf of others, is that the trial court further limited recovery by placing unreasonable limits on what constituted good cause for failure to opt in. We find no merit in this objection. The trial court twice afforded absent members opportunities to pursue individual relief despite their failure to file timely proofs of claim. Initially, the Feb. 21, 1979 order announcing the Stage II proceedings granted each late filer a hearing before a special master to determine whether or not there was "good cause which shall not include neglect" for her failure. Later, prior to approving the settlement, the court modified the terms to provide similar hearings for women who had never filed claims, but who had filed timely letters of objection in response to the June, 1980 notice of proposed settlement. Under this order, persons would be permitted to share in the distribution of the settlement fund if they demonstrated "good cause" which "shall include only personal incapacity by reason of illness or hospitalization, nonreceipt of notice, or the mailing of a claim form which was not received by the Clerk." Final Order Overruling Objections to Settlement, October 1, 1980.

■ Adoption of the "good cause" standard in both orders was an appropriate exercise of the trial court's discretion in defining the scope of the class action judgment and settlement. Nor did the court err in confirming the reports of special masters who during Stage II heard numerous requests for relief from the time-bar. We note that there was no determination that appellants are class representatives for all those whose requests were rejected. Even if they were, however, the master's findings of fact were not clearly erroneous. Fed.R. Civ.P. 53(e)(2). According to the briefs, the masters included as "good cause" fear of retaliation, difficulty in understanding English, failure to receive the claim form by mail, or a belief that timely mailing rather than filing sufficed to meet the deadline. Appellants did not offer evidence which would put them in any of the favored categories operative at the time they attempted to file. With regard to the hearings scheduled for those who never filed claims but who did object to the settlement, the trial court made the scope of "good cause" more explicit and, in effect, less flexible, but this was not an abuse of discretion under the circumstances. *See Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir. 1974), *cert. denied sub nom. Abate v. Pittsburgh Plate Glass Co.*, 419 U.S. 900, 95 S.Ct. 184, 42 L.Ed.2d 146 (1975).

## V

The judgments appealed from, overruling appellants' objections to a proposed class

action settlement because they are by the terms of an earlier order excluded from obtaining individual relief, will be affirmed.