George Marshall GRACE, Steven T. Lebow, and Kevin P. Pilate, et al., Plaintiffs,

v.

The CITY OF DETROIT, Defendant.

Civ. No. 90–CV–71078–DT.

United States District Court, E.D. Michigan, S.D.

Nov. 25, 1992.

John R. Runyan, Jr., Detroit, MI, for plaintiffs.

Terri L. Hayles, Detroit, MI, for defendant.

## MEMORANDUM OPINION
## AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This matter is before the Court on Plaintiffs' motion for a determination of the timeliness of claims filed by putative class members in this class action lawsuit. For the reasons outlined below, the Court must grant the motion with regard to some of the claimants, and deny it as to others.

Plaintiffs brought this action pursuant to 42 U.S.C. § 1983, alleging abridgement of their right to travel in violation of the Equal Protection clauses of the Constitutions of the United States and of the State of Michigan. Plaintiffs were applicants and potential applicants for employment with the City of Detroit who have either been denied hire or the privilege of applying for positions with the City solely because of the City's pre-employment residency requirements.

On March 5, 1991, this Court granted Plaintiffs' unopposed motion for certification of a class composed of all past, present, and future applicants for employment with the City who have been rejected on the basis of these requirements, including those who would have applied but for the requirements, as well as those whose applications either have been refused or rejected because of failure to establish either pre-application or pre-employment residency.

This Court granted partial summary judgment as to liability to Plaintiffs on April 5, 1991. 760 F.Supp. 646. Judgment for Plaintiffs was entered on April 9, 1992, and damages remain to be determined.

On January 2, 1992, Plaintiffs were ordered to send individual notice by first-class mail to the last known addresses of each putative class member, and to provide notice by publication, as well. Defendant was ordered to provide the names and last known addresses of all putative class members whom Defendant could reasonably identify. Defendant was ordered to bear the cost of both the individual notice and notice by publication. The order, which had been proposed by Plaintiffs, also provided that, for inclusion in the class, putative class members must "return the claim form below or write to the Clerk of the Court no later than April 1, 1992."

A total of 494 claims were received by the Clerk of the Court. Three hundred seventy-five (375) were timely filed by April 1, 1992. The 119 remaining putative class members whose claims might be excluded fall into three categories: (1) those 77 whose claim forms were received by April 3, 1992, and presumably had been mailed by April 1, 1992, although the Clerk did not retain the postmarked envelopes; (2) those 16 whose claim forms were received after April 3, 1992, but were accompanied by an explanation; and (3) those 26 whose claim forms were received after April 3, 1992, and who provided no explanation for their tardiness. The Plaintiff Class Representatives ask that this Court accept the untimely claims of the first and second categories.

Under such circumstances, the Ninth Circuit has applied a "good cause" standard which "allow[s] a late claim where there's good and sufficient cause shown therefor" (sic) in *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir.1977), *quoting* the district judge in *In re Gypsum Cases*, 386 F.Supp. 959 (N.D.Cal.1974). "A good and sufficient cause may indicate that the claim was set in motion, that the notary didn't send them the claim or sign it, or someone didn't do something after the machinery was set in motion." *Id.* at 1128.

In *Kyriazi v. Western Electric Co.*, 647 F.2d 388 (3rd Cir.1981), the Third Circuit affirmed the findings of a Special Master appointed by the District Court to determine the timeliness of claims. "Good cause" included "failure to receive the claim form by mail, or a belief that timely mailing rather than filing sufficed to meet the deadline." *Id.* at 396.

The establishment of a claims notice requirement is an example of the dis-

cretionary powers given to the trial court in Rule 23(d)(2) to "make appropriate orders."[1] Moreover, this Court retains its traditional equity powers to accept untimely claim forms. *See Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir.1972). *See also* 7B Charles A. Wright, *et al.*, Federal Practice & Procedure ¶ 1793 p. 294 (2d ed. 1986) (Rule 23(d)(2) was designed as a general statement of the equitable powers of the federal courts.) The adoption of the good cause standard is "an appropriate exercise of the trial court's discretion in defining the scope of the class action judgment and settlement." *Kyriazi, supra* at 396.

■ It appears appropriate, therefore, that this Court adopt the "good cause" standard insofar as the first category of the 77 putative class members whose claims were received by April 3, 1992. The Court is mindful that it must "be sensitive to the needs of citizens to protect their common rights while avoiding the expense and procedural burdens of major litigation." *Robinson v. Union Carbide Corp.*, 544 F.2d 1258 (5th Cir.) (Wisdom, J., concurring), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977).

This group of claimants presumably mailed their claim forms by the April 1, 1992 deadline. The notice stated that class members had to "return the claim form below *or write to* the Clerk of the Court ... *no later than April 1, 1992.*" (Emphasis added). The Court is in agreement with Plaintiffs in surmising that putative class members could have interpreted the notice to require that the forms be *mailed* no later than April 1, 1992. The Court recognizes that there is a particular need for judicial sensitivity toward putative claimants when the claimants are without fault. *See Zients, supra* at 630–631.

Moreover, the Clerk of the Court did not file the envelopes in which the claim forms were received, thereby making it impossible to determine which forms were mailed by April 1, 1992. However, Plaintiffs have submitted a copy of the claim form of one putative class member which was not received until April 3, 1992, and that form was postmarked March 31, 1992.

Therefore, the Court applies the "good cause" standard to the first category of 77 claim forms due to the class members' possible "belief that timely mailing rather than filing sufficed to meet the deadline." *Kyriazi, supra* at 396. Accordingly, the first category of untimely claim forms, those received as late as April 3, 1992, will be accepted.

■ Turning to the second category of potentially excludable claimants, the court, while mindful of the "good cause" standard, as applied to late filings, must also give due consideration to the overriding law governing the responsibilities of parties to class actions. The settled law in this area precludes this Court from allowing those claim forms, with or without accompanying explanations, which were received after April 3, 1992.

A class notice which bars claims not filed before a particular date is properly analyzed under Fed.R.Civ.P. 23(d)(2), which provides authority for such additional notices. 3B James W. Moore, Moore's Federal Practice ¶ 23.72, at 23–462 (2d ed. 1992), 7B Wright, *et al.*, *supra* § 1787, at 217; § 1793 at 311–12 (2d ed. 1986). Notice pursuant to Rule 23(d)(2) is discretionary and provides only that notice be given "in such a manner as the court may direct...." The sufficiency of the 23(d)(2) claims notice is measured against the broader standards of due process, rather than the requirements of Rule 23(c)(2)[2], as

1. Under Fed.R.Civ.P. 23(d), the court may make orders:

  (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to

signify whether they consider the representation fair and adequate, to intervene and present claims or defenses or otherwise to come into the action.

2. Rule 23(c)(2) provides in pertinent part:
  In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual

interpreted in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).[3] *See, e.g.*, 2 H. Newberg, Newberg on Class Actions, § 8.15, at 126 (2d ed. 1985).

A reasonable claims notice procedure is not prejudicial and is necessary to the efficient control of a class action suit. Such notice not only provides the court with a count of potential claims, but is necessary for further scheduling. *See* 7B Wright, *et al., supra* § 1787, at 216–17; § 1793, at 312. The filing deadline given by the notice is a "reasonable tool for expediting expediting the suit and managing possible claims." *Bing v. Roadway Express, Inc.*, 485 F.2d 441, 449 (5th Cir.1973)

A proper discussion of Rule 23(d)(2) due process requirements begins with *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It is elementary and fundamental that the intended recipients receive "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. "The notice must be of such nature as *reasonably* to convey the required information." *Id.* (Emphasis supplied).

The Court went on to state that:

We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable. "Now and then an extraordinary case may turn up, but constitutional law, like other mortal contrivances, has to take some chances, and in the great majority of instances, no doubt, justice will be done." (Citations omitted).

*Id.* at 319, 70 S.Ct. at 660.

In the instant case, notice was by first-class mail and by publication. As noted by the Supreme Court in *Greene v. Lindsey*, 456 U.S. 444, 455, 102 S.Ct. 1874, 1880, 72 L.Ed.2d 249 (1982) (quoting *Mullane, su-* pra, 339 U.S. at 319–320, 70 S.Ct. at 660), "the mails provide an 'efficient and inexpensive means of communication' ... upon which prudent men will ordinarily rely in the conduct of important affairs."

"It is fair and reasonable to proceed, as the district court did here, by mailing claim notices to last known addresses of potential class members and by publication." *Gypsum, supra* at 1127. "First-class mail and publication consistently have been considered sufficient to satisfy the notice requirements of Rule 23(d)(2) ... for advising class members of a proposed settlement and of their right to file claims." *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3rd Cir.1985). Moreover, first-class mail and publication are deemed adequate even under the stricter notice requirements of Rule 23(c)(2). *Eisen, supra*, 417 U.S. at 173–75, 94 S.Ct. at 2150–51.

Putative class members are not deprived of due process when their claim forms are found unacceptable for untimeliness. "Due process does not, of course, require that the defendant in every civil case actually have a hearing on the merits." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Nor does it require that notice be perfect. "What the Constitution does require is 'an opportunity ... granted at a meaningful time and in a meaningful manner' ... 'for (a) hearing appropriate to the nature of the case.'" *Id.* (Citations omitted).

The explanations offered by Plaintiffs for the failure of some of the putative claimants to respond by the deadline are not unusual to a class action, nor do they constitute good cause for their tardiness. Such failures are the foreseeable and inevitable disadvantages of prosecuting a claim as a class action rather than an individual action, which are outweighed by the advantages to the many responsive claimants

---

notice to all members to can be identified through reasonable effort.

**3.** *Eisen* directs courts to provide mandatory notice to putative claimants under Fed.R.Civ.P. 23(c)(2) to fulfill the requirements of due pro-

cess. An order directing potential class members to file claim forms merely requires "discretionary notice which the court may find it advisable to give...." *See* Fed.R.Civ.P. 23 Advisory Committee Notes to 1966 Amendment.

who would otherwise be unable to have their rights vindicated. 2 Newberg, *supra* § 5.02, at 427.

The notice, which was both mailed and published by Plaintiffs' counsel, provided all putative claimants with an opportunity to be heard and was "reasonably certain to inform those affected". *Id.* Judging by the foregoing standards, the notice procedure in the instant case was constitutionally adequate.

The question which remains is whether those who claim delayed notice were deprived of their constitutional right to be heard. As aforementioned, the Court is mindful of the need for judicial sensitivity toward putative claimants who are without fault. However, in this situation, the Court must balance the burdens placed upon the parties to determine who bears the risk of nondelivery of notice.

The general principle underlying *Eisen* is that the Class Representative bears the burdens of identifying and notifying the class. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380, 2393, 57 L.Ed.2d 253 (1978). For it is the Class Representative *"who seeks to maintain the suit as a class action and to represent other members of his class." Id.* at 356, 98 S.Ct. at 2392. (Emphasis added). The burden is occasionally placed upon the Defendant when he can perform a necessary task with less difficulty or expense than could the Representative Plaintiff. *Id.* "[O]rdinarily, *there is no warrant for shifting* the cost of the representative plaintiff's performance of these tasks to the defendant." *Id.* (Emphasis supplied). The *Oppenheimer* Court, therefore, cautioned that "a district court exercising its discretion under Rule 23(d) should be considerably more ready to place the cost of the defendant's performing an ordered task on the representative, who derives the benefits...." *Id.* at 358, 98 S.Ct. at 2393.

As in any equitable action, the Court must balance the interests of the parties.

Plaintiff urges that this Court exert judicial sensitivity toward the 16 putative claimants who are arguably without fault in this matter. The Court must also consider other factors. Defendant was ordered to, and did, bear the costs of notification. Defendant also provided the last known addresses of the putative claimants. The notice, drafted by Plaintiffs, bore the clear warning that "failure to return the claim form or to write to the Court by April 1, 1992, will preclude you from recovering any relief in connection with this lawsuit."

The Class Representatives had not only provided the language of this Court's January 2, 1992 order, but also mailed out the notices and made the requisite publication. The great majority of the claim forms (375 out of 494) were filed in a timely fashion. Clearly, notice was sufficient to reach and inform putative class members that their response was needed by April 1, 1992.

Defendant's argument that accepting tardy claim forms increases their financial obligation is well-taken by this Court. Plaintiffs are asking that Defendant's liability be expanded to provide for putative class members who failed to make a timely claim. The liability of Defendant was established by order of this Court on April 5, 1991, with damages the only issue remaining. Unlike the cases cited by Plaintiff, *Zients, supra*, and *In re Gypsum Antitrust Cases*, supra, *in this case there is no fixed settlement fund. Every tardy claim accepted would be an expansion of Defendant City's liability for a reason not originally ordered.*

The total sum of Defendant's liability is yet to be determined, and increases with each successive claimant. The Court did not originally order, nor did Plaintiffs request, that tardy class members *with explanations* be accepted. If that were the case, the class could continue to grow *ad infinitum*, and a large part of the benefit of a class action suit would be lost.[4]

---

**4.** *See Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (class actions are employed where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages). *See also* 1 *Newberg, supra* § 1.01, at 2 ("One major advantage of class actions to the courts, attorneys, and litigants is the judicial economy and efficiency they can achieve").

Moreover, Defendant City would be faced with the neverending expansion of its liability, as more class members with equally worthy explanations appeared, during the course of the litigation. To allow the tardy claims in the second category would only serve to prejudice Defendant.

In light of the principles elucidated in *Eisen* and *Oppenheimer,* this Court is precluded from shifting the burden of notice from the Class Representative to the Defendant. In the instant case, the Court has exercised its discretion and determined that Defendant bear the cost of the notice to the Plaintiff class. Notification itself, not merely the expense thereof, is the responsibility of the Class Representatives.

The *Zimmer* Court, *supra,* in light of the large sums of money involved and the much lower response rate of that case, noted that in hindsight, it might have been appropriate to have ordered further notice procedures. Here, however, it is noteworthy that 91% of the responses of this case were timely.

Moreover, as the Supreme Court noted in *American Pipe and Constr. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), after a class has been established and notice of membership has been sent, putative claimants "have [the] duty to take note of the suit or to exercise any responsibility with respect to it in order to profit from the eventual outcome of the case." Therefore, "absent class members must be alert for the possibility that they must respond to a proof of claim notice in order to prove their actual damages and to participate in any recovery." 3 Newberg, *supra* § 16.04, at 283.

It is unfortunate that some of the putative claimants filed their claims after April 3, 1992. Yet, notice need only meet the constitutional test of the "best notice practicable under the circumstances," the standard set forth in *Mullane, supra,* and Rule 23(d)(2). To hold the putative claimants to the time limit set forth in the notice is not arbitrary, particularly where notice by publication was also given, and in a highly publicized case, but a practice consistently upheld by the courts. *Bing, supra* at 448–

49; *Sagers v. Yellow Freight System, Inc.,* 529 F.2d 721, 735 (5th Cir.1976); *Sledge v. J.P. Stevens & Co.,* 585 F.2d 625, 652–53 (4th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1789, 60 L.Ed.2d 241 (1979).

Accordingly, IT IS ORDERED that the claim forms of the 77 putative claimants which were filed by April 3, 1992 shall be deemed timely filed.

IT IS FURTHER ORDERED that all claim forms filed after April 3, 1992 be deemed untimely filed, and rejected from class membership.

IT IS SO ORDERED.