Nancy LOZADA, Bob Warren, A.D. Christian and Jeanne Uwamaliya, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DALE BAKER OLDSMOBILE, INC., a Delaware corporation, d/b/a Dale Baker Kia, d/b/a Dale Baker Suzuki, d/b/a Fresh Start Auto Center, and d/b/a National Fleet Liquidators of Michigan; and CFC–Consumer Finance Corporation, f/k/a Consumer Finance Corporation, a Virginia corporation, Defendants.

No. 1:99–CV–620.

United States District Court,
W.D. Michigan,
Southern Division.

May 16, 2001.

John E. Anding, Bridget C. Kehoe, Drew, Cooper & Anding, Grand Rapids, MI, Phillip C. Rogers, Grand Rapids, MI,

for Nancy Lozada, Bob Warren, A.D. Christian, Jeanne Uwamaliya, plaintiffs.

Michael D. Wade, Garan, Lucow, Miller & Seward, PC, Grand Rapids, MI, David N. Campos, Grand Rapids, MI, for Dale Baker Oldsmobile, Inc., dba Dale Baker Kia dba Dale Baker Suzuki dba Fresh Start Auto Center dba National Fleet Liquidators of Michigan, defendant.

William K. Holmes, Warner, Norcross & Judd LLP, Grand Rapids, MI, for CFC–Consumer Finance Corporation, a Virginia corporation fka Consumer Finance Corporation, defendant.

Molly Elizabeth McFarlane, Warner, Norcross & Judd LLP, Grand Rapids, MI, for Fox Motor Group LLC, movant.

### OPINION RE VARIOUS MOTIONS

HILLMAN, Senior District Judge.

This is an action brought pursuant to the federal Truth in Lending Act ("TILA") and various state-law claims: the Michigan Motor Vehicle Installment Sales Contracts Act ("MVISCA"), MICH. COMP.LAWS 566.302; the Motor Vehicle Sales Finance Act ("MVSFA"), MICH.COMP. LAWS 492.112; the Michigan Consumer Protection Act ("MCPA"), MICH.COMP.LAWS 445.911; replevin; and unjust enrichment. The matter has come before this court on six motions filed by defendant Dale Baker Oldsmobile ("Dale Baker"): (1) motion to decertify class (dkt # 166); (2) motion to permit post-certification discovery (dkt # 167); (3) motion for reconsideration of court's March 8, 2001 order regarding damages under the ("MVISCA") and for certification of the issue to the Michigan Supreme Court (dkt # 168); (4) motion for judgment on the pleadings as to TILA (dkt # 169); (5) motion for judgment on the pleadings on claims of replevin and

unjust enrichment (dkt # 170); (6) motion for judgment on the pleadings as to all claims for damages under the MVISCA (dkt # 171). In addition, plaintiffs filed a motion to strike the dispositive motions (dkt # 175) and a motion to add class members (dkt # 189).[1]

All motions have been fully briefed and the court heard oral argument on May 3, 2001. The court placed on the record at oral argument its proposed rulings on the motions, advising that an opinion and order would follow. The following opinion more fully sets forth the court's determinations as to all of the motions, save the motion for postcertification discovery (dkt # 167).

### I.

This action has been before the court on numerous prior motions. The court will not repeat the factual background of the case, but will set forth only the procedural posture and nature of the claims.

This is a consumer class action alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and multiple state-law claims. Plaintiffs' claims all involve the propriety under various laws of Dale Baker's failure to provide, at or before the time of signing, a copy of the retail installment sales contract ("RISC") to customers of Dale Baker's special finance department.

The case has been the subject of numerous prior opinions by this court (dkt ## 66, 85, 105, 117, 131, 157). In prior opinions, the court has, among other things, denied defendant's motion to dismiss for failure to state a claim under the TILA (dkt # 66). The court also certified the class (dkt # 117) as follows:

---

1. Defendant also moved to adjourn trial (dkt # 199), but that motion was withdrawn as of

April 25, 2001 (dkt # 204) because the scheduling conflict was resolved.

All persons who executed a retail installment contract through the special finance department of Dale Baker Oldsmobile, Inc., where Dale Baker Oldsmobile, Inc., was identified on the face of the contract as the entity to whom the debt arising from the contract is or was initially payable, and who were not given a copy of the contract at the time of its execution.

In connection with the federal TILA claim, the class period was limited to those who meet the class definition and whose retail installment contracts were executed during the one-year period immediately preceding the date of filing of plaintiffs' complaint on August 16, 1999. In connection with the state-law counts, the class period was limited to those whose retail installment contracts were executed during the six-year period immediately preceding the date of filing of plaintiffs' complaint. The court noted that the periods comported with the limitations periods under applicable law.

In addition, the court granted partial summary judgment to plaintiffs, holding that defendant's failure to provide a copy of the retail installment sales contract to the consumer at the time the contract was signed violated the TILA, the MVISCA, the MVSFA and the MCPA. Further, defendant admitted that between December 1998 and August 31, 1999, during the period of time Daryl and Stormie Moore were employed by Dale Baker, customers of the Special Finance Department did not receive, either at or before signing, a copy of the retail installment sales contract ("RISC"). The court therefore found that plaintiffs who had purchased their vehicles during that period were proven class members to whom defendant was liable under the recited statutes.

Thereafter, the court denied a motion to amend the class description and approved the form of notice to class members. Two notices were approved. The first, known as the "opt-out notice," was sent to the 414 plaintiffs who purchased their vehicles during the time the Moores operated the Special Finance Department. The second notice, the "opt-in notice," was directed to those persons from August 16, 1993 through December 1, 1998, who purchased their vehicles before the Moores began to manage the Special Finance Department.

In addition, on March 8, 2001, the court issued an opinion governing the availability of damages under the MVISCA. In that opinion, the court concluded that plaintiffs were entitled to recover as damages under the MVISCA the finance charges paid or owed on their RISCs.

On March 16–21, 2001, Dale Baker filed the six motions presently pending before the court. The matter is set for trial starting May 22, 2001.

## II.

As previously noted, three of the motions (dkt ## 169, 170, 171) filed by Dale Baker are dispositive motions filed pursuant to Fed.R.Civ.P. 12(b)(6) in relation to the TILA, the MVISCA and the common law claims of replevin and unjust enrichment. Plaintiffs have moved to strike these motions. Given the significance of the dispositive motions, I will first address the motion to strike and the motions for judgment on the pleadings. The remaining motions will be discussed in turn.

### A. *Motion to Strike Dispositive Motions*

Plaintiffs have filed a motion to strike the dispositive motions. Defendant's motions were filed on March 19, 2001, eight months after the deadline for filing dispositive motions set by this court in its case management order. Plaintiffs therefore argue that the motions, which are untimely, should be stricken.

■ Defendant responds that under Rule 12(b)(6), defenses are never waived and no deadline may be imposed by a court short of trial. In addition, defendant asserts that when this court set a scheduling order declaring a deadline for "dispositive motions," it did not mean and could not mean Rule 12(b)(6) motions because the only kind of motions to be considered at a FED.R.CIV.P. 16 conference are summary judgment motions under FED.R.CIV.P. 56. Defendant therefore contends that its dispositive motions remain timely.

Defendant's motions for judgment on the pleadings were not timely filed under this court's case management order. Federal Rule of Civil Procedure 16 expressly provides that the purposes of the conference and scheduling orders include "expediting the disposition of the case"; "establishing early control so that the case will not be protracted because of lack of management"; and "discouraging wasteful pretrial activities." FED.R.CIV.P. 16(a)(1)–(3). The rule directs the district court to establish a scheduling order "that limits time ... to file motions...." FED.R.CIV.P. 16(b)(2). Following issuance of a schedule, deadlines established in the scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge...." FED.R.CIV.P. 16(b). The Rule also provides that the court may consider and "may take appropriate action, with respect to ... the formulation and simplification of the issues, including the elimination of frivolous claims or defenses...." FED.R.CIV.P. 16(c)(1).

Each of these provisions unquestionably contemplates scheduling limitations on the filing of motions to dismiss. Moreover, Rule 12 itself provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial...."

FED.R.CIV.P. 12(c). In the instant case, appropriate time for filing was established by the scheduling order. In addition, trial was set to begin in this matter on May 22, 2001. The timing of defendant's motion had the potential to disrupt the trial schedule.

It unquestionably is true that FED.R.CIV.P. 12(h) permits a motion under Rule 12(b)(6) to be made at the time of trial. However, under FED.R.CIV.P. 12(d), motions under Rule 12(b)(6) and 12(c) presumptively "shall be heard and determined before trial...." The court is hard pressed to understand why the latest round of motions could not have been filed at a much earlier date. For example, defendant now moves for judgment on the pleadings on the grounds that the TILA does not permit statutory damages for the type of violation presented in the instant case. Whether such damages are available under the TILA is a question that has been apparent since this case was filed. Similarly, the availability of damages under the MVISCA not only has been apparent, but also has been the subject of a prior decision of this court.

As a consequence, I am satisfied that the present motions are in violation of this court's scheduling order, placing significant burdens on the court and creating the potential for delay of the proceedings. Parties may not make a practice of litigating piecemeal, trotting out new arguments whenever another has failed.

■ Nevertheless, in determining whether to permit changes to the scheduling order, this court must consider "whether there is any the merit to the underlying motion and weigh the hardship to the opposing party." *Sullivan v. Continental Accessories, Inc.,* No. 4:89cv30, 1991 U.S.Dist. LEXIS 4641, 1991 WL 420042 (W.D.Mich.1991). In the instant case, one of defendant's motions to dismiss raises

significant questions of statutory construction affecting what damages, if any, are available on plaintiffs' TILA claim. A second motion seeks for the first time a determination of plaintiffs' claims of replevin and unjust enrichment, questions not previously determined by this court. The third motion raises a novel claim regarding the implicit repeal of the MVISCA.

Since the court will be faced with answering these questions at trial, and further since though difficult, it remains possible to decide the motions prior to the time set for trial, the court is persuaded that defendant's motions should be decided at this time. Therefore, the court will allow and consider defendant's motion for judgment on the pleadings as to the TILA (dkt # 169), motion for judgment on the pleadings on claims of replevin and unjust enrichment (dkt # 170), and motion for judgment on the pleadings as to all claims for damages under the MVISCA (dkt # 171). I am satisfied that no undue hardship will be caused to plaintiffs by late consideration of the motions. Accordingly, plaintiffs' motion to strike (dkt # 175) is **DENIED.**

## B. *TILA*

Defendant contends that it is entitled to dismissal of plaintiffs' claims under the TILA because plaintiffs have failed to allege damages recoverable under the statute. Specifically, defendant asserts that plaintiffs allege no *actual* damages and that statutory damages under the TILA are not available for those violations of the TILA alleged by plaintiffs.

The TILA permits recovery of damages as follows:

*Except as otherwise provided in this section,* any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction. . . . or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $200 or greater than $2,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor;

\* \* \* \* \* \*

[3] . . . In connection with the disclosures referred to in subsections (a) and (b) of section 1637 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title, section 1637(a) of this title, or of paragraph (4), (5), (6), (7), (8), (9), or (10) of section 1637(b) of this title or for failing to comply with disclosure requirements under State law for any term or item which the Board has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms or items referred to in section 1637(a) of this title or any of those paragraphs of section 1637(b) of this title. In connection with the disclosures referred to in subsection (c) or (d)

of section 1637 of this title, a card issuer shall have a liability under this section only to a cardholder who pays a fee described in section 1637(c)(1)(A)(ii)(I) or section 1637(c)(4)(A)(i) of this title or who uses the credit card or charge card. *In connection with the disclosures referred to in section 1638 of this title,* a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or for failing to comply with disclosure requirements under State law for any term which the Board has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title . . . .

15 U.S.C. 1640(a) (emphasis added). As can be seen from the quoted language, the TILA broadly provides that both actual and statutory damages are recoverable for "any requirement imposed under this part" [2] "[e]xcept as otherwise provided under this section . . . ." 15 U.S.C. 1640(a). The statute therefore presumptively makes available statutory damages unless otherwise excepted.

Thereafter, § 1640(a) identifies specific subsections of the statute in which it limits damages to only particular provisions. The structure of the statute therefore is somewhat odd: the exceptions to the general provision allowing statutory damages are stated by way of a positive list of included items under particular subsections, rather than by a list of excluded provisions. The oddness of the structure

appears to have led some courts to misconstrue the excepting language as an exclusive list of TILA provisions that are subject to statutory damages. *See Brown v. Payday Check Advance, Inc.,* 202 F.3d 987, 991 (7th Cir.2000) (holding that "Section 1640(a) says that statutory damages are available "only" for violations of enumerated subsections and rules."); *Molenbeek v. West Michigan Auto & Truck Outlet, Inc.,* No. 1:00–cv–286 (W.D.Mich. Mar. 15, 2001) (Miles, J.) (holding same and citing *Brown* ).

■ Given the structure of the statute, the list of included provisions within cited subsections must be considered a reverse description of *exceptions,* as anticipated by the first sentence of the statute, not a positive and exclusive enumeration of provisions for which statutory damages are provided. The excepting language does not stand alone and may not be given preeminence over the general provision. Exceptions to broad statutory language must be narrowly, not broadly, construed in order to avoid undermining the operation of the general principle. *See, e.g., Mills Music, Inc. v. Snyder,* 469 U.S. 153, 105 S.Ct. 638, 83 L.Ed.2d 556 (1985); *United States v. First City Nat. Bank of Houston,* 386 U.S. 361, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967). *See also* 2A Norman J. Singer, Statutes and Statutory Construction, § 47.11 at 250–51 (6th ed. 2000) ("[W]here a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than exceptions.").

The Seventh Circuit in *Brown* has held that § 1640(a) "says that statutory damages are available 'only' for violations of

---

**2.** The reference to "this part" in the opening sentence of § 1640(a) is to Part B of the TILA. 15 U.S.C. §§ 1631–49. *See id.; see also*

*Brown v. Payday Check Advance, Inc.,* 202 F.3d 987, 990 (7th Cir.2000).

enumerated subsections and rules." *Brown*, 202 F.3d at 992. The statute, however, does not say that. Instead, it says that within recited subsections, "only" certain provisions are eligible for statutory damages. Thus, the exception provides a limitation on statutory damages only as described and only within the listed subsections. Applying the general rule limiting exceptions so as not to eviscerate the general rule, violations of sections not mentioned remain subject to statutory damages under the general provision. For example, violations of §§ 1631 (Disclosure requirements), 1632 (Form of disclosure), and 1639 (Requirements for certain mortgages) all place requirements on creditors but are not specifically mentioned in § 1640(a). No basis exists for concluding that these unmentioned sections are excluded from the presumptive language of § 1640(a) authorizing statutory damages.

Moreover, reading the exception as an enumerated and exclusive list of provisions, eligible damages would not only fail to treat the provision as an exception, as drafted, but also would read an odd conflict into Congress' treatment of § 1639. Section 1640(a)(4) considers violations of § 1639 so severe as to warrant recovery of damages in the amount of all finance charges and fees paid by the customer— damages available for violations of no other section. *See* 15 U.S.C. § 1640(a)(4) ("[I]n the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material."). Yet adopting the reasoning of the Seventh Circuit would require this court to consider that Congress had concluded that a violation of § 1639 was merely a "picky and inconsequential formal error" intended by Congress to be excluded from statutory damages. *See Brown*, 202 F.3d at 991

(holding that list at the end of § 1640(a) was added "to curtail damages awards for picky and inconsequential formal errors," and that the requirements of § 1632(a) are not subject to statutory damages because § 1632 is not mentioned in that list).

I conclude that the enumerated provisions, as exceptions, must be construed narrowly. Thus construed, they clearly were intended to limit the availability of statutory damages only within the particular section or subsection mentioned in § 1640(a).

The violations found in the instant case fall under § 1638(b)(1), which provides:

> Except as otherwise provided in this part, the disclosures required under subsection (a) of this section shall be made before the credit is extended. Except for the disclosures required by subsection (a)(1) of this section, all disclosures required under subsection (a) of this section and any disclosure provided for in subsection (b), (c), or (d) of section 1605 of this title shall be conspicuously segregated from all other terms, data, or information provided in connection with a transaction, including any computations or itemization.

15 U.S.C. § 1638(b)(1). In other words, § 1638(b)(1) provides requirements for both the timing and the form of disclosures under § 1638(a), but provides no disclosure requirements itself. The Seventh Circuit has held that certain violations of the requirements under § 1638(b)(1) governing form are not subject to statutory damages under § 1640(a)(2) because § 1638(b)(1) is not one of the enumerated provisions set forth in § 1640. *Brown*, 202 F.3d at 991. Judge Miles, relying exclusively on broad language from *Brown*, has held that violations of the timing requirements of § 1638(b)(1) are not subject to statutory damages because not listed in

the enumerated list describing the exceptions.

■ However, the only reference to § 1638 contained in section 1640(a) reads as follows:

> *In connection with the disclosures referred to in section 1638* of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title.

15 U.S.C. § 1640(a) (emphasis added). Thus, the language of the exception as it applies to section 1638 specifically states that the exception applies only "[i]n connection with the disclosures referred to in section 1638 of this title". The exception does not state "in connection with section 1638 of this title" or "in connection with the requirements of section 1638 of this title." The TILA does not encompass only disclosure requirements. Instead, it requires certain disclosures, prohibits certain kinds of charges, and addresses the form and timing in which disclosures are made. As a result, the word "disclosures" is not a comprehensive description of all types of potential violations of the TILA generally or of § 1638 specifically. Instead, the word has its ordinary and more narrow meaning. *See* RANDOM HOUSE COLLEGE DICTIONARY, p. 379 (Rev. ed.1980) ("1. the act or instance of disclosing; exposure; revelation. 2. something that is disclosed; a revelation.").

The only "disclosures referred to in section 1638" are contained in subsection 1638(a), which is entitled, "Required disclosures by creditor." Of the disclosures mentioned in 1638(a), only the enumerated numbers are subject to statutory damages. No dispute exists that statutory damages are not available for disclosures referred to in § 1638(a) that are not listed—that is, §§ 1638(a)(1), (2) (in part), (7), (8), and (10)–(14). *See Brown,* 202 F.3d at 991; *Rockey v. Courtesy Motors, Inc.,* 199 F.R.D. 578 (W.D.Mich.2001) (Scoville, Mag. J.) (holding that statutory damages are not available for violations of § 1638(a)(2)(B)(iii)).

However, the remaining subsections, §§ 1638(b) through 1638(d), are not "disclosures referred to in section 1638...." 15 U.S.C. § 1640(a). Instead, they are provisions addressing the form and timing of those disclosures. A requirement that a disclosure be made in a certain manner and at a certain time does not fall within the previously stated definition of a "disclosure." Because these provisions are not "disclosures referred to in section 1638," they are not within the language of the exception to statutory damages contained in § 1640(a). As a result, they fall within the general language of § 1640(a), which states that "except as otherwise provided" statutory damages are available.

Such a reading is consistent with the other types of violations described by the enumeration. All of the recited subsections address various kinds of disclosures required by the TILA and no other kinds of provisions. The types of provisions excluded from the lists under each section are noticeably more minor in nature than those included.

I therefore conclude that the understanding of § 1640(a) as accepted by the Seventh Circuit in *Brown* —allowing such damages only for enumerated provisions— is at odds with the fundamental structure of the statute, which provides presumptive availability of statutory damages followed by exceptions. Under the interpretation given by the *Brown* court, the initial phrase of the statute stating "[e]xcept as otherwise provided" is rendered meaningless—indeed, it is contradicted. If the

enumerations are the sole source of authority for section 1640(a)(2) damages, no reason exists for the initial phrase. Without a presumption of availability of statutory damages, the exceptions do not constitute an "otherwise," merely a simple grant of authority.

I am persuaded that treating the enumerations correctly—as a description of the scope of exceptions to the presumptive availability of statutory damages—preserves the language and structure of the statute and applies ordinary rules of statutory construction. Such exceptions should be read narrowly. When Congress chose to except certain "disclosures referred to in section 1638," no basis exists for assuming that Congress intended to except other requirements that were not "disclosures referred to in section 1638." I therefore conclude that statutory damages are available under § 1640(a)(2) for violations of § 1638(b)(1).

Alternatively, however, plaintiffs argue that defendant has failed properly to disclose as required by §§ 1638(a)(3), (4), (5), and (6) because if the disclosures were not made in accordance with § 1638(b)(1) and Regulation Z, 12 C.F.R. § 226.17(a), requiring delivery of a copy of the disclosures, then the required disclosures were not made at all within the meaning of the statute. Plaintiffs note that the Seventh Circuit in *Brown* determined that a failure to conspicuously segregate the cost-of-credit disclosures as required by § 1638(a) did not amount to a failure to disclose. Plaintiffs contend, however, that *Brown* is not directly on point with this case because the required disclosures in the instant case were not disclosed at all within the meaning of the statute and regulations. *See Jackson v. Check 'N Go of Illinois, Inc.*, 193 F.R.D. 544 (N.D.Ill.2000) (distinguishing its own circuit authority in *Brown* for lender failures to conspicuously segregate

disclosure of the amount of security interest and holding that such failure amounted to a violation of § 1638(a)(9)); *see also Donnelly v. Illini Cash Advance, Inc.*, No. 00 CO94, 2000 WL 1161076 (N.D.Ill. Aug.16, 2000) (same).

As I have stated, I am persuaded that violations of section § 1638(b) are not "disclosures referred to in section 1638" and therefore remain subject to statutory damages under the general principle of § 1640. However, if a failure to deliver disclosures under § 1638(b) is considered a "disclosure[ ] referred to in section 1638" within the meaning of § 1640, then the failure to deliver disclosures in the manner provided by § 1638(b)(1) must be considered a failure to disclose the required terms under § 1638(a). The requirements of § 1638(b)(1) may not be considered "disclosures" for purposes of § 1640 and yet not part of the disclosure requirements of § 1638(a).

Moreover, no basis exists for considering a disclosure made if it is not made in accordance with the requirements of § 1638(b)(1). Since § 1638(b)(1) expressly provides the form and time in which disclosures under § 1638(a) must be made, § 1638(a) disclosures may not be said to be made unless and until they are made in compliance with § 1638(b)(1). Section 1638(b), by saying when and how a disclosure is made, becomes part of the definition of what constitutes a "disclosure" under TILA. Defendant's argument would permit a lender to meet the requirements of § 1638(a) by merely orally advising plaintiff of the required information while failing to record the information in writing. Or, as here, a lender could briefly show the information to the borrower while failing to allow him a copy of that information to take with him.

At oral argument, defense counsel argued that the purposes of the statute are

met by merely showing the consumer the TILA disclosures before signing. Defendant asserts that violations of the timing requirements for providing a copy are merely "technical" violations amounting to the sort of minor harm not punishable by statutory damages. In particular, counsel argued that the objective of the TILA of providing information for consumers to take to other lenders could not be met in any event, since by signing the RISC, both the consumer and Dale Baker were bound by the contract and everyone knew it.

Defendant's position conflicts sharply with its earlier argument on plaintiffs' motion for summary judgment. At that time, defendant asserted that each of the transactions at issue was not consummated until a third-party lender purchased the RISC. It argued that Dale Baker never intended to be a lender. It argued that evidence of its intent outside the RISC was a question of fact evidenced by the addendum or rider that purported to supplement the RISC, in which Dale Baker advised the borrower that if a third-party lender did not accept the loan, the sale was not final and Dale Baker was entitled to repossess the vehicle. This court rejected Dale Baker's argument, holding that the RISC represented the entire contract, that it was a contract under Michigan law, and that Dale Baker was a "lender" as a matter of law under the TILA.

Dale Baker's present argument highlights another danger the timing requirements serve to prevent: where disclosures are not delivered to consumers before consummation, consumers are at the mercy of a lender which chooses whether to consider the contract a contract and enforce it, or not, at its sole convenience. Dale Baker now argues to this court that since all parties were bound at the time of signing, a borrower need only raise the contract as a defense to any inappropriate action by

the dealer. Of course, without possession of the contract, the borrower is unable to consult it or use it to enforce his legal rights.

Dale Baker may not have it both ways. Either the consumer is permitted to have the disclosures before the transaction is consummated, in order to shop around, or he is entitled to have the disclosures immediately upon signing, in order to protect his legal rights in the event the lender attempts to repossess his vehicle. Dale Baker may not simply disregard one of the primary purposes of the statute as set forth by Congress. *See* 15 U.S.C. § 1601 (Congressional findings and declaration of purpose).

■ In sum, I conclude that § 1640(a) permits recovery of statutory damages for violations of § 1638(b)(1) because the subsection is not a "disclosure referred to in section 1638." Alternatively, I conclude that even if the form and timing requirements of § 1638(b)(1) are considered to be "disclosures referred to in section 1638," statutory damages are available on the facts of this case because defendant has not made the disclosures required by §§ 1638(a)(3), (4), (5) and (6) in the time and manner required by § 1638(b)(1). In either event, defendant's motion for judgment on the pleadings on plaintiffs' TILA claim will be **DENIED**.

### C. *Motion on Pleadings on Replevin and Unjust Enrichment (Dkt # 170)*

Defendant asserts that plaintiffs' claims under Counts 5 and 6 of the complaint (replevin and unjust enrichment, respectively) should be dismissed because plaintiffs have failed to state a claim for relief. Defendant contends that the theory of replevin permits recovery of particular personal property that has been wrongfully detained and for damages caused by that

unlawful detention. *See Whitcraft v. Wolfe,* 148 Mich.App. 40, 45 n. 1, 384 N.W.2d 400 (1985). Defendant asserts that plaintiffs are not seeking the recovery of wrongfully detained personal property, but instead are seeking to recover damages in the form of finance charges collected by defendant on a contract fully compliant with the common law but that was not disclosed in accordance with certain statutes. As a result, defendant contends that the claim and delivery statute, MICH.COMP. LAWS § 600.2920, and court rule, Mich. Court Rule 3.105(A), do not cover this circumstance. Defendant notes that the court rule requires a description of the actual property and further permits the court to order the sheriff to seize the described property. It contends that neither provision is sensible when plaintiffs do not seek to recover specific property, but instead monetary damages.

■ Pursuant to MICH.COMP.LAWS § 600.2920(1),

A civil action may be brought to recover possession of any goods or chattels which have been unlawfully taken or unlawfully detained and to recover damages sustained by the unlawful taking or unlawful detention....

*Id.* The statute, by its terms provides a remedy for wrongful takings or possessions of identifiable personal property. It does not provide a general remedy for recovery of damages in compensation or penalty for breach of any statute or common law.

In *Sparling Plastic Indus., Inc. v. Sparling,* 229 Mich.App. 704, 583 N.W.2d 232, 236–37 (1998), the Michigan Court of Appeals specifically noted that actions for replevin under MICH.COMP.LAWS § 600.2920 apply only to tangible property and may not be brought for intangibles such as the value of a business or good will of a business. Although *Sparling* does not directly

address the recovery of money as damages, the reasoning of the decision strongly supports defendant's interpretation of the statute and court rule.

■ In support of their replevin claim, plaintiffs cite *Oakland County v. Bice,* 386 Mich. 143, 150, 191 N.W.2d 338 (1971). *Bice* does not directly decide the question before this court. Instead, it discusses the availability of mandamus to recover cash seized by Oakland County pursuant to a grand jury subpoena duces tecum during an investigation of illegal gaming. Although *Bice* mentions the traditional availability of an action for replevin to recover illegally kept monies, the decision does not discuss the theory of replevin directly. Moreover, even accepting that on the facts of *Bice,* replevin is available to recover specific funds seized and wrongfully retained, that determination would not apply to the use of replevin to recover monetary damages for breach of an entirely separate statute. Defendant did not wrongfully take finance charges from plaintiffs. Instead, plaintiffs complain that defendant violated various separate statutory provisions involving disclosures, one of which penalizes violations with the forfeiture of finance charges.

I conclude that an action for replevin does not lie for recovery of the damages alleged in this action. Accordingly, defendant's motion for judgment on the pleadings is **GRANTED** and Count 5 of plaintiffs' complaint is **DISMISSED WITH PREJUDICE.**

Defendant also contends the plaintiffs' Count 6, alleging unjust enrichment, should be dismissed for failure to state a claim. Defendant asserts that a claim for unjust enrichment "is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circum-

stances as to give rise to a legal or equitable obligation to account therefor." 66 Am.Jr.2d, Restitution and Implied Contracts, § 3, p. 945. Defendant argues that unjust enrichment is a theory based on an implied contract. *B & M Die Co. v. Ford Motor Co.*, 167 Mich.App. 176, 181, 421 N.W.2d 620 (1988). Where, as here, plaintiffs' claims are based on an express contract, the RISC, defendant contends that no contract may be implied by the court. *See Barber v. SMH (US), Inc.* 202 Mich. App. 366, 509 N.W.2d 791 (1993).

 Plaintiffs respond, however, that not all unjust enrichment claims are "implied contract" claims in disguise. The elements of a claim of unjust enrichment are (1) receipt of a benefit by the defendant from the plaintiff and (2) which benefit it is inequitable that the defendant retain. *Barber*, 202 Mich.App. at 375, 509 N.W.2d 791; *B & M Die,* 167 Mich.App. at 181, 421 N.W.2d 620. Plaintiffs contend that in addition to implied contract, restitution is another equitable basis justifying recovery for unjust enrichment. *Michigan Educ. Employees Mut. Ins. Co. v. Morris,* 460 Mich. 180, 198, 596 N.W.2d 142 (1999). Plaintiffs assert that where Dale Baker wrongfully collected undisclosed finance charges, plaintiffs should be entitled to equitable recovery of those finance charges.

Plaintiffs' claim is unpersuasive. Defendant failed to disclose finance charges only in the sense that federal and state statutory provisions required defendant to provide a copy of the disclosures prior to consummation of the contract. Thus, the failure to disclose is a creation of statutory law and any remedy should be tied to such statutory provision. Plaintiffs' claims for recovery of finance charges should rise or fall on the right to recover those damages under the federal or state statutes requiring delivery of the disclosures.

Accordingly, defendant's motion to dismiss plaintiffs' claim of unjust enrichment is **GRANTED** and Count 6 of plaintiffs' complaint is **DISMISSED WITH PREJUDICE.**

### D. *Motion on Pleadings re MVISCA Repeal (Dkt # 171)*

Defendant next argues that the court should dismiss plaintiffs' claims brought pursuant to the Motor Vehicle Installment Sales Contracts Act ("MVISCA"), Mich. Comp.Laws 566.301–.302. Dale Baker asserts that the MVISCA was impliedly repealed by the adoption in 1951 of the Michigan Motor Vehicle Sales Finance Act ("MVSFA"), §§ 492.101–492.141.

 Michigan courts are reluctant to conclude that a statute has been repealed by implication. *Dodak v. State Admin. Board,* 441 Mich. 547, 561, 495 N.W.2d 539 (1993). The general rule is that:

> [t]he presumption is always against the intention to repeal where express terms are not used, and the implication, in order to be operative, must be necessary. Repeals by implication are not favored and will not be indulged in if there is any other reasonable construction. The intent to repeal must very clearly appear, and courts will not hold to a repeal if they can find reasonable ground to hold the contrary.

*Dougherty v. Joyce,* 233 Mich. 619, 621, 207 N.W. 863 (1926).

 In order to find that the legislature impliedly repealed a statute, defendant must show either (1) that a subsequent legislative act conflicts with a prior act; or (2) that a subsequent legislative act is clearly intended to occupy the entire field covered by a prior enactment. *Dodak,* 441 Mich. at 563, 495 N.W.2d 539. The court "will not infer the repeal of a

statute by a subsequent enactment except when the two acts are 'so incompatible that both cannot stand.'" *Id.* at 572, 495 N.W.2d 539 (quoting *In re Reynolds Estate,* 274 Mich. 354, 360, 264 N.W. 399 (1936)).

 Dale Baker asserts that the MVISCA irreconcilably conflicts with the MVSFA because if a lender drafts a retail installment sales contract that complies with the seven disclosures required under the MVISCA, that contract will not full comply with the MVSFA because additional disclosures are required under the MVSFA. Dale Baker's argument is unpersuasive. The statutes are not inconsistent. While the MVSFA is supplemental to the MVISCA, in that it requires disclosures in addition to those required under the MVISCA, nothing required by either statute *conflicts* with the requirements of the other. It is perfectly possible for a lender to comply with both statutes. Indeed, as plaintiffs note, the MVSFA directly states that "[c]ompliance with the requirements of the Truth in Lending Act, title I of Public Law 90–321 ... is compliance with the disclosure provisions of section 13 [Mich.Comp.Laws § 492.113 (MVSFA) ] *and of section 2 of Act No. 305 of the Public Acts of 1939, being section 566.302 of the Michigan Compiled Laws [MVISCA].*" Mich.Comp.Laws 492.122a (emphasis added). In other words, the MVSFA contemplates the existence of the MVISCA and recognizes the absence of conflict between the disclosure requirements of both Michigan statutes and the federal Truth in Lending Act. In sum, no conflict exists between the MVISCA and the MVSFA.

Nor can defendant demonstrate legislative intent to occupy the entire field. First, the previously quoted section of the MVSFA expressly recognizes the existence of the MVISCA. Second, the MVISCA

was revised in 1961, ten years after the adoption of the MVSFA. At that time, the Michigan legislature expressly repealed sections 3–14 of the MVISCA. The legislature, however, *did not repeal* sections 1 and 2 of the MVISCA. Where the legislature has expressly repealed some portions of a statute but not others, no basis exists for this court to conclude that the legislature intended the repeal of the remaining portions.

Further, the MVSFA does not demonstrate an intent to occupy the field. The MVSFA addresses the *willful* violation of the requirements of the statute. It provides a criminal remedy for that intentional conduct. The MVSFA also provides a civil remedy, but only for the assessment of "prohibited" charges, not for violations of the remaining portions of the statute, including the disclosure requirements. The MVISCA, in contrast, does not consider willfulness, providing a civil remedy for violations. The breadth and the remedies of the two statutes, therefore, are distinct. No evidence exists that the legislature contemplated the implicit repeal of the MVISCA.

Finally, defendant's argument is at odds with the general presumption against implied repeals. *Dodak,* 441 Mich. at 562, 495 N.W.2d 539. Such repeal is particularly unlikely given the passage of 50 years since adoption of the MVSFA.

I therefore conclude that the MVISCA has not been impliedly repealed by adoption of the MVSFA. Accordingly, defendant's motion to dismiss Count 3 of plaintiffs' complaint for failure to state a claim is **DENIED.**

### E. *Motion for Reconsideration and for Certification to Mich. Supreme Court*

Defendant moves this court for reconsideration of its March 8, 2001 order denying

defendant's motion in limine on damages available under the MVISCA, MICH.COMP. LAWS 566.302 (dkt # 168). Defendant generally asserts that this court erred in its interpretation of the damages provision of the MVISCA. In particular, Dale Baker continues to argue that its intentional failure to provide consumers with copies of their retail installment sales contracts at the time of signing amounts to a *de minimus* violation of the MVISCA for which damages in the amount of finance charges are not available.

In its opinion of March 8, 2001, this court fully analyzed MICH.COMP.LAWS §§ 566.301–.302. As stated in that opinion, the Michigan Supreme Court has directly addressed how the language "substantial compliance" should be interpreted by the courts when used to describe compliance with legislative requirements. *See Northern Concrete Pipe, Inc. v. Sinacola Companies—Midwest, Inc.*, 461 Mich. 316, 321–22, 603 N.W.2d 257 (1999). The fact that the Michigan Supreme Court has not applied the analysis to the MVISCA does not render the meaning of the term "substantial compliance" uncertain. Applying that standard, this court held that the intentional violation of an express statutory provision governing the timing of delivery cannot be considered substantial compliance with the statute.

■ Moreover, as the court held, the remedy paragraph, on its face, is clear:

> Under a written instrument evidencing *a retail installment sale which does not substantially comply with the requirements of this section*, the seller shall not be entitled to recover, collect or retain that part of the obligation which represents the finance charge and the buyer shall not be liable therefor.

Mich 566.302, ¶ 4 (emphasis added). Under ordinary principles of statutory and grammatical construction, the modifying phrase "which does not substantially comply with the requirements of this section" modifies the noun (and modifiers) immediately preceding it—"retail installment sale." *See Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 596 N.W.2d 119, 123 (1999) ("It is a general rule of grammar and of statutory construction that a modifying word or clause is confined to solely to the last antecedent, unless a contrary intention appears.") (citing *Weems v. Chrysler Corp.*, 448 Mich. 679, 699, 533 N.W.2d 287 (1995); 2A NORMAN J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION, § 47.33, p. 270 (5th ed.1992)). Dale Baker's assertion that the phrase modifies the earlier noun "instrument" does not comport with traditional interpretive rules and, in the absence of evidence of contrary intent, is not a reasonable construction of the statute.

■ Further, Michigan follows the general rule applied by this court that statutory construction is a "holistic" endeavor. *See LaGuire v. Kain*, 440 Mich. 367, 487 N.W.2d 389 (1992) (Boyle, J. concurring in part). A holistic reading of the statute provides no indication that one set of requirements mandated by the statute has been segregated from any other set of requirements for any purpose, including the availability of a remedy. Indeed, while not previously noted by this court, that conclusion is reinforced by the preamble to the statute, which provides:

> AN ACT to regulate retail installment sales contracts covering motor vehicles; *to prescribe penalties for violations of the provisions of this act;* and to repeal all acts and parts of acts inconsistent herewith.

Preamble, P.A.1939, No. 305 (Eff. Sept. 29, 1939). As with the statutory language, the language of the preamble makes clear that the act is intended to regulate not just the disclosures required in retail installment sales contract agreements, but to regulate

generally the making of retail installment sales contracts. *See Malcolm v. City of East Detroit*, 437 Mich. 132, 142, 468 N.W.2d 479, 484 (1991) ("Although a preamble is not to be considered authority for construing an act, it is useful for interpreting its purpose and scope."). The preamble further states that the act is intended to prescribe penalties for violations of the provisions of the act generally, not just for violations of the disclosure requirements. No basis exists in the language of the statute or in the preamble to support Dale Baker's claim that the legislature intended to limit the remedy to only those violations of the statute involving disclosure of the seven terms of the third sentence of paragraph one.

As a consequence, this court's interpretation of the MVISCA does not represent a close question. No grounds exist for this court's reconsideration of the claim.

Moreover, while the court has the discretion under Mich.Ct. Rule 7.305(B) to certify the question to the Michigan Supreme Court, this case does not present a circumstance warranting such certification. Pursuant to Rule 7.305(B)(1),

> When a federal court or state appellate court considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may on its own initiative or that of an interested party certify the question to the Michigan Supreme Court.

*Id.* In interpreting MICH.COMP.LAWS § 566.302, this court undoubtedly faces a question that Michigan law may resolve.

However, as I have stated, while the Michigan Supreme Court has not directly interpreted MICH.COMP.LAWS § 566.302, the question is controlled by Michigan Supreme Court decisions governing statutory interpretation generally and governing the specific controlling language of the statute.

As a result, the Michigan Supreme Court's well-established rules of statutory interpretation reasonably support only one interpretation of the language of the damages provision of the MVISCA.

Therefore, the language of the MVISCA presents no novel questions of statutory interpretation. Instead, the Michigan Supreme Court has provided ample guidance to this court regarding the interpretation of Michigan statutes.

■ Considerations of comity and federalism caution federal courts from needlessly addressing questions of state law and deciding state-law issues of first impression. *See Peterson v. Chesapeake & Ohio Ry. Co.*, 1988 U.S.Dist. LEXIS 18137 (April 28, 1988) (citing *Jewell Theatre Corp. v. Oakland County Prosecutor*, 420 Mich. 51, 359 N.W.2d 513 (1984)). Nevertheless, comity does not require that this court abandon its jurisdictional authority to decide questions of state law where, as here, those questions are not close. *Id.* As Judge Bell noted in *Peterson*, "this Court is confident of its ability to accurately read and apply relevant state law...." *Id.* at **16–17.

Moreover, defendant's request for certification of the issue comes late in the day. At no time did defendant request that this court decline to exercise supplemental jurisdiction over plaintiffs' state-law claims, nor did the issue arise in the context of a denial of class certification of the federal claim. *Cf. Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578 (W.D.Mich.2001) (declining to exercise supplemental jurisdiction over plaintiffs' state-law claims at time of denying motion for class certification on TILA claim). Instead, this court previously has heard and decided both plaintiffs' motion for partial summary judgment (resolving defendant's liability under the Michigan statutes) and defendant's own

motion in limine on the instant question of damages available under the MVISCA. Only in its motion for reconsideration of the court's denial of the latter motion does defendant raise the possibility of certification. In such circumstances, "certification would effectively duplicate judicial exertion on a question which this court does not consider to be close providing [defendant] with an unwarranted second chance to litigate in the state court after failing in the federal court." *Id.* at * 16 (citing *Cantwell v. University of Massachusetts*, 551 F.2d 879, 880 (1st Cir.1977)).

Finally, the court is reluctant to delay this action further by deferring trial in anticipation of the unlikely acceptance for certification by the Michigan Supreme Court. *See Peterson* at * 16 (citing *Knox v. Eli Lilly and Co.*, 592 F.2d 317 (6th Cir.1979) (certification process considered illusory); *In re Pike*, 62 B.R. 765, 768 n. 1 (W.D.Mich.1986) (recalling dismal delay in certification process)). *See also* M. Bryan Schneider, *"But Answer Came There None": The Michigan Supreme Court and the Certified Question of State Law*, 41 WAYNE L.REV. 273 (1995) (noting infrequent acceptance by Michigan Supreme Court of questions certified by federal courts).

Accordingly, defendant's motion for reconsideration and for certification to the Michigan Supreme Court is **DENIED.**

### F. *Motion to Decertify the Class (dkt # 166)*

 Defendant next moves to decertify the class and to shift the costs of notice. Defendant's motion is based on plaintiffs' alleged violations of the court's order prescribing the time for service of class notice to the "opt-in" class—that group of individuals from August 16, 1993 to December 1, 1998, who did not receive a copy of their retail installment sales contracts at the time of signing. Specifically, defendant contends that the order required plaintiffs to mail the notice to the opt-in class within fourteen days of receipt of names and addresses of class members. Defendant asserts that because it provided those names and addresses to plaintiffs on December 22, 2000, plaintiffs were required to mail the notices by not later than January 5, 2001. Plaintiffs did not mail the class notices until January 25, 2001. As a sanction for failure to timely mail the notices, defendant asks that the class be decertified or that all class members responding after February 4, 2001 (30 days after the prescribed date of mailing) be excluded by the court.

Defendant's argument is unpersuasive. Contrary to defendant's representations, this court, on November 21, 2000, ordered Dale Baker to provide to class members a list of the names, last known addresses, and date of execution of the contract, along with the name and last known address of the lender purchasing the contract by not later than December 8, 2000 (docket # 137). Plaintiffs were ordered to mail the class notices "within fourteen days of receipt from Dale Baker of the information described in paragraphs (1) and (2) of [the November 21, 2000] order."

On December 1, 2001, Dale Baker moved for an extension of time to provide the information, contending that compilation of the opt-in list would require physical examination of each of the transaction files over the period of years (dkt # 135). Dale Baker asked for an extension until January 19, 2001 to complete the information. On December 14, 2000, the court granted the extension, but only until January 12, 2001 (dkt # 138), again setting plaintiffs' notice mailing date as fourteen days after receipt of the information from Dale Baker.

Just eight days after the grant of extension, December 22, 2000, Dale Baker drafted a cover letter transmitting the names and addresses of opt-in class members and the dates of purchase. However, in its letter transmitting the names and addresses, defendant mis-identified the list as that of the "opt-out class." In addition, that letter and list for some reason were not received by plaintiffs until December 28, 2000. On December 29, 2000, a representative of plaintiffs' counsel sought clarification that this was the opt-in class list and advised defendant that plaintiffs still expected to receive, in accordance with this court's order, "the date of and the finance company involved in each deal for the persons listed on the attachment." Defendant did not respond until January 8, 2001, and at that time merely advised that the list was the "opt-in" list. Plaintiffs' notices were mailed seventeen days after this confirmation.

According to this history, the earliest date defendant may be considered to have provided the required information is January 8, 2001, the date defendant correctly identified the list to plaintiffs. Defendant cannot be said to have supplied the information until property identifying it. By this measure, the notices mailed on January 25, 2001 were late, but were only three days late from defendant's accurate identification of the list.

Moreover, defendant makes no representation as to when, if ever, it provided the information regarding the name and address of the lender who purchased each contract. The court's scheduling order provided that plaintiffs' date for mailing was 14 days after "receipt from Dale Baker of the information described in paragraphs (1) and (2) of this order . . . ," which included not just the names, addresses and purchase dates, but also "the name and last known address of the lender purchas-

ing the contract." Therefore, the record does not reflect when, if ever, Dale Baker has provided all of the information required by this court in its November 21, 2000 and December 14, 2000 orders. As a result, no basis exists for concluding that plaintiffs were late at all.

Regardless, plaintiffs candidly admit that they calendared the mailing date as fourteen days after expiration of the deadline extension requested by defendant. That calendaring mistake resulted in notice being mailed at the most three days late. Defendant's request for the extreme sanction of decertification on the sole ground of three days delay in complying with this court's order is unreasonable and is rejected.

Defendant also seeks sanctions for the improper mailing of the opt-in notice to the opt-out class members as well as the opt-in class members. Specifically, defendant seeks to have plaintiffs pay the cost of mailing to the opt-out class. Plaintiffs respond that confusion regarding which list reflected which category of class members led plaintiffs mistakenly to mail the opt-in notice to opt-out class members. They assert, however, that they have never sought to have Dale Baker pay for that mailing and that Dale Baker has not paid it. They provide a copy of a letter from John Anding to Michael Wade advising of the error and further advising that plaintiffs "take full responsibility for the error." (Pl.Surreply, Ex. 2.)

Based on plaintiffs' representations and the correspondence between the parties, it does not appear that defendant has been charged for the duplicate mailing. However, if defendant has been charged for the mailing of the wrong second notice to the opt-out plaintiffs, plaintiffs shall immediately correct the billing to eliminate those charges and shall reimburse to defendant any overcharges paid.

■ In its reply brief, defendant makes a further argument for decertification. Defendant contends that without authority of this court, plaintiffs re-mailed the opt-in notice to those class members for whom the first mailing was returned as not-deliverable. Apparently, plaintiffs employed a company to locate new addresses for those notices returned as not-deliverable and then re-mailed the notice to those new addresses. Defendant objects that the re-mailing was not authorized by this court.

I agree with Dale Baker that the re-mailing was not authorized by this court's order. Plaintiffs should have sought permission to re-mail. That re-mailing, however, affects only the timeliness of the responses of the plaintiffs receiving late notices. It provides no basis for decertifying the class.

This court must consider, however, whether plaintiffs who replied to the re-mailed notice should be counted in the opt-in class. As plaintiffs note, notice to class members is required to be the "best notice practicable." FED.R.CIV.P. 23(c)(2). Plaintiffs contend that class members should not be unduly punished simply because they have changed addresses when actual notice can be accomplished within a reasonable period thereafter. Plaintiffs therefore argue that this court should adopt a good cause standard for counting late responses from class members.

■ In support of that proposition, plaintiffs cite *Grace v. City of Detroit,* 145 F.R.D. 413 (E.D.Mich.1992), which applied a "good cause" standard to claims forms that appeared to have been postmarked before the deadline but were not timely delivered by the post office. *Grace,* however, does not support plaintiffs' assertion that "good cause" is demonstrated when the original mailing address is incorrect. In fact, in *Grace,* the district court ex-

pressly rejected the notion that claim forms mailed after the deadline should be accepted late, even if such lateness was accompanied by explanation. *Id.* at 414–15. The court specifically recognized that notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Such notice need not be perfect. *Id.* at 319, 70 S.Ct. 652. Moreover, it is fair and reasonable for the court to mail such forms to the last known address of potential class members. *In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir.1977). "Putative class members are not deprived of due process when their claim forms are found unacceptable for untimeliness." *Grace,* 145 F.R.D. at 416.

■ It is appropriate that this court set a reasonable response time in order to efficiently manage the class action and to set future deadlines. *Id.* The court also must consider the prejudice to defendant of an ever-expanding class, especially in the unusual circumstances of this case in which defendant bears the cost of class mailings. *Grace,* 145 F.R.D. at 417. Further, at all times the burden of notifying class members remains with the class representatives, not defendant. *Id.* at 418.

This court, in reaching an equitable solution, must weigh the interests of the parties. Here, defendants supplied the last known addresses of potential class members and paid for the mailing, as directed by this court. The notice, as drafted by the plaintiffs, bore the clear warning that the form must be returned within 30 days of the postmark on the envelope containing the notice or claimants would be barred from participation in the class action. Further, this court set the date for mailing

class notice and made no provision for remailing. At no time did plaintiffs seek the opportunity for a secondary mailing, despite the fact that invalid addresses could have been anticipated by the parties in light of the time period of the class.

On balance, the equities counsel against the expansion of the time period for responding to the notice. Accordingly, postcards postmarked later than February 24, 2001, thirty days after the original mailing, will be rejected as untimely.

■ Defendant also complains that plaintiffs included a return postcard with the notices, without approval of the court. The postcard did not include a place for the class member to date the card. Defendant contends that many postmarks are not legible and that the postcard used by plaintiffs did not include a place for the class member to put the date of signing. As a consequence, defendant asserts that the class should be decertified.

The notices authorized by the court clearly referred to a return postcard to be enclosed with the notice, although the text of the postcard was not presented to or reviewed by the court. In hindsight, it might have been advantageous to include a signature date and to use a more substantial notice of claim for class members to make a claim. *See Grace,* 145 F.R.D. 413 (addressing the sending of a class notice following the grant of partial summary judgment on liability requiring putative class members to affirmatively file a notice of claim as means of identifying the number of class claimants).

Nevertheless, reliance on the postmark date was completely reasonable. Defendant made no effort to improve the quality of the forms at the time they were proposed and made no objection to the alleged defects it now raises. In addition, contrary to defendant's contention, most of the postmark dates are legible, even on the

court's copies. I am persuaded that many obscure dates will be legible on the originals. The court is available to review and decide any contested date stamps.

In sum, defendant's motion to decertify the opt-in class is **DENIED.**

### H. *Motion to Add Class Members (dkt # 189)*

As previously discussed in conjunction with defendant's motion to decertify the opt-in class, plaintiffs have moved to add four individuals whose return service postcards were received late. The four postcards were received March 13, 14, 21 and 29, 2001, respectively. At oral argument, plaintiffs provided a fifth postcard received April 25, 2001. Although plaintiffs note that the addresses on the returned cards are different from those to which notice was mailed, for the reasons previously stated in response to defendant's motion to decertify, the court declines to accept late returned cards.

As previously discussed, the court will limit class members to those who timely filed their notices of claim in response to the class notice mailed on January 25, 2001. Accordingly, all responses received after February 24, 2001, whether late responses to the initial mailing or responses to the re-mailing (both timely and late), shall be excluded. Plaintiffs' motion to add class members is **DENIED.**

### III.

In sum, defendant's pending motions are decided as follows: (1) the motion to decertify the class (dkt # 166) is **DENIED;** (2) the motion for reconsideration of this court's March 8, 2001, opinion and order, and for certification to the Michigan Supreme Court (dkt # 168) is **DENIED;** (3) the motion for judgment on the pleadings as to TILA damages (dkt # 169) is **DE-**

**900**

NIED; (4) the motion for judgment on the pleadings on claims of replevin and unjust enrichment (dkt # 170) is **GRANTED;** and (5) the motion for judgment on the pleadings for all claims under the MVIS-CA is **DENIED.** Plaintiffs' motion to strike defendant's motions ## 169, 170, 171 (dkt # 175) and plaintiffs' motion to add class members (dkt # 189) are **DENIED.**

### *ORDER*

In accordance with the opinion filed this date,

**IT IS ORDERED** that defendant's the motion to decertify the class (dkt # 166) is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion for reconsideration of this court's March 8, 2001, opinion and order, and for certification to the Michigan Supreme Court (dkt # 168) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant's motion for judgment on the pleadings as to TILA damages (dkt # 169) is **DENIED;**

**IT IS FURTHER ORDERED** that defendant's the motion for judgment on the pleadings on claims of replevin and unjust enrichment (dkt # 170) is **GRANTED;**

**IT IS FURTHER ORDERED** that defendant's motion for judgment on the pleadings for all claims under the MVIS-CA is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' motion to strike defendant's motions ## 169, 170, 171 (dkt # 175) is **DENIED.**

**IT IS FURTHER ORDERED** that plaintiffs' motion to add class members (dkt # 189) is **DENIED.**