In re Bobby **FERRELL,** Jr., Debtor.

Kathleen McDonald, Chapter 13 Trustee, Appellant,

v.

Checks–N–Advance, Inc., Appellee.

BAP No. NV–05–1420–MaMoS.

Bankruptcy No. S–03–11408–BAM.

Adversary No. S–03–01199–BAM.

United States Bankruptcy Appellate Panel for the Ninth Circuit.

Argued and Submitted May 18, 2006.

Filed Oct. 27, 2006.

fees due to the creditor's alleged violations of the federal Truth in Lending Act ("TILA") and state consumer protection statutes. The creditor defaulted in the adversary proceeding and the bankruptcy court entered a default judgment disallowing the claim. However, based on its construction of TILA, the bankruptcy court also denied the "prevailing" trustee's demand for statutory damages of $90, actual damages, and attorney's fees and costs (in the range of $7,000).

On appeal, the trustee argues that the bankruptcy court misinterpreted the law and failed to compensate her under federal or state law, or as a private attorney general. We conclude that the bankruptcy court did not err, and AFFIRM.

### FACTS

On June 27, 2002, Bobby Ferrell, Jr. ("Debtor") borrowed $300 on a "payday loan" from Checks–N–Advance, Inc. ("C–N–A"). He executed a Consumer Loan Agreement ("Agreement") in which he agreed to repay, in one week's time, the $300 plus $45 interest (an annual percentage rate of 782.143%). He failed to repay the loan.

### Procedural History

#### A. From Claim to Default

Debtor filed a voluntary chapter 13 petition on February 7, 2003. In an odd procedural twist, the chapter 13 *trustee* ("Trustee") then filed a proof of claim for an unsecured nonpriority debt in the amount of $345 on behalf of C–N–A. Thereafter, Trustee objected to the claim she had just filed, and filed an adversary

Christopher P. Burke, Esq., Christopher P. Burke & Associates, Las Vegas, NV, for Appellant.

Checks–N–Advance, Inc., Las Vegas, NV, for Appellee.

Before: MARLAR, MONTALI, and SMITH, Bankruptcy Judges.

### OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

Prepetition, the chapter 13 [1] debtor had obtained a "payday" loan for $345, and he did not repay it. In his bankruptcy case, the trustee filed a creditor's proof of claim for the loan, objected to the claim, and counterclaimed for damages and attorney's

---

1. Unless otherwise indicated, all section, chapter, and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, as promulgated before its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 (2005), and rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

proceeding and counterclaim[2] against C–N–A.

Trustee alleged multiple violations of TILA, 15 U.S.C. §§ 1601 et seq. and its implementing regulations, 12 C.F.R. §§ 226.1 et seq. ("Regulation Z"), as well as state consumer loan regulation Nevada Revised Statute ("NRS") § 604.164.3. She sought actual damages and statutory damages under TILA, as well as attorney's fees and costs, the latter under both TILA and NRS § 604.164.3. Trustee offered to prove that her "reasonable" attorney's fees were approximately $7,000. *See* Tr. of Proceedings 5:16–24, Sept. 21, 2005.

C–N–A failed to answer, and Trustee filed an application for the entry of a default judgment, in which she requested judgment for only statutory damages in the amount of $90 (twice the amount of any finance charge pursuant to 15 U.S.C. § 1640(a)(2)), and attorney's fees, in an amount to be determined postjudgment. C–N–A did not respond to the application.

On October 4, 2004, the bankruptcy court entered its decision and order on Trustee's application. Taking the allegations of the complaint as true, the court found that C–N–A had violated the specified provisions of TILA. However, it interpreted the TILA remedy provision as only allowing damages for a violation of certain enumerated provisions that did not include the sections cited by Trustee. Therefore, it held that statutory damages of $90 were *not* available to Trustee.

Because Trustee failed to enforce liability against C–N–A for statutory damages and attorney's fees, which was the only remedy sought in the application for default judgment, the bankruptcy court denied the application without prejudice, giving Trustee the opportunity to request an evidentiary hearing on her claim for *actual* damages.

Trustee immediately moved for reconsideration, challenging the bankruptcy court's legal conclusion that statutory damages were not available. Trustee maintained that statutory damages were also available for violations of Regulation Z, or awardable to her as a prevailing party on the counterclaim, because that cause of action is designed to protect consumer rights under federal and state laws in a collection action.

The bankruptcy court granted the motion for reconsideration pending the filing of an amended application for default judgment. Trustee then filed the amended application in which she also raised a new state civil action for attorney's fees for an alleged "unfair trade practice" by C–N–A. Again, C–N–A did not respond to the amended application.

### B. The Court's Decision

On August 24, 2005, the bankruptcy court entered its decision and order regarding the amended default application. Taking the allegations in the complaint as true, it found that C–N–A was liable[3] for three violations of TILA, three violations of Regulation Z, and three violations of NRS 604.164.3, a Nevada statute that requires the same federal disclosures.[4] The

---

**2.** Rule 3007 provides that "[i]f an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding." Rule 7001(1) provides that a proceeding to recover money is an "adversary proceeding."

**3.** C–N–A's liability is not under review, since it has filed neither an appeal or a cross-appeal.

**4.** Former NRS § 604.164.3 (now NRS § 604A.410(2)(g)) provided:

> 3. Disclosures required for a similar transaction by the federal Truth in Lending Act.

TILA violations had been succinctly enumerated as:

   a. failing to provide the required disclosures prior to consummation of the transactions in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 226.17(b).

   b. failing to properly and conspicuously disclose the "finance charge" in violation of 15 U.S.C. § 1632(a) and Regulation Z, 12 C.F.R. § 226.17(a)(2).

   c. failing to properly and conspicuously disclose the annual percentage rate ("APR") in violation of 15 U.S.C. § 1632(a) and Regulation Z, 12 C.F.R. § 226.17(a)(2).

*See* Compl. 4, July 18, 2003.

However, the bankruptcy court still concluded that Trustee was not entitled to *statutory* damages for these violations, but that she would be given an opportunity to prove any *actual* damages at an evidentiary hearing. It also denied Trustee's request for attorney's fees pending proof of any actual damages.

### C. The Evidentiary Hearing and Judgment

Prior to the evidentiary hearing, Trustee filed a brief on damages in which she agreed that Ninth Circuit law would not allow actual damages unless she was able to show Debtor's "detrimental reliance" on the violating conduct. She further conceded that "[a]s Plaintiff [Trustee] was not the actual borrower, and no evidence was taken because this involves a default judgement [sic], Plaintiff *cannot prove reliance,* under the Ninth Circuit standard." Trustee's Brief 2:9–11, Sept. 14, 2005 (emphasis supplied). Trustee then argued for a change in the law, which she believed was erroneous, and she also requested actual damages in the amount of the overcharge (the $45 in interest), plus her attorney's fees and costs of approximately $7,000.[5]

▮ Following a hearing, at which Trustee made the same concessions and also made an offer of proof of attorney's fees in the approximate amount of $7,000, the bankruptcy court entered an order, on September 22, 2005, that incorporated its previous findings and orders. It ordered that the amended application for default judgment was (1) granted to the extent of sustaining Trustee's objection to C–N–A's proof of claim and disallowing the $345 claim[6]; and (2) denied, to the extent that Trustee asked for statutory damages, actual damages, attorney's fees or any other form of relief. This appeal followed.[7]

### ISSUES

1. Whether statutory damages were awardable under TILA for C–N–A's disclosure violations.

NRS § 604.164 (2003).

**5.** This entire case is, in reality, about whether a plaintiff in a default action should be awarded $7,000 in fees for a wrongly-disclosed $45 finance charge.

**6.** The panel wonders why all this expense and procedural time was necessary to disallow a claim that the creditor itself never filed!

**7.** Trustee filed a timely notice of appeal of the September 22, 2005 order. The BAP Clerk's Office notified Trustee that the order did not meet the separate document requirement and ordered that requirement deemed waived unless the bankruptcy court entered a separate judgment within 14 days. On February 3, 2006, the bankruptcy court entered a separate final judgment which contained the same rulings. *See Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). Trustee did not file a notice of appeal from the February 3, 2006 judgment. The panel has jurisdiction over the appeal of the September 22, 2005 order, notwithstanding either a violation of the separate document rule or a lack of an amended notice of appeal. *See Stainton v. Lee (In re Stainton),* 139 B.R. 232, 233 n. 1 (9th Cir. BAP 1992).

2. Whether Trustee had to show Debtor's "detrimental reliance" in order to prove actual damages for C–N–A's disclosure violations.

3. Whether C–N–A's default, in regards to the state law claim, entitled Trustee to attorney's fees under Nevada law.

4. Whether Trustee was entitled to attorney's fees for prevailing on the counterclaim, which resulted in the disallowance of C–N–A's proof of claim.

### STANDARD OF REVIEW

■ The panel reviews the bankruptcy court's conclusions of law, including statutory construction, *de novo. White v. City of Santee (In re White)*, 186 B.R. 700, 703 (9th Cir. BAP 1995).

■ When a decision on an award of attorney's fees involves a question of law, we will not disturb the bankruptcy court's determination unless it erroneously applied the law. *See Dawson v. Wash. Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1145 (9th Cir.2004) ("Bankruptcy court's award of attorney fees is reviewed for abuse of discretion or erroneous application of the law.").

### DISCUSSION

#### A. Statutory Damages: TILA and Regulation Z

##### 1. Background of TILA

TILA was enacted in 1968 as Title I (Consumer Credit Cost Disclosure) of the federal Consumer Credit Protection Act, Pub.L. 90–321, 82 Stat. 146 (1968), and has been amended several times. TILA's stated purpose is:

to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a) (2000).

■ TILA applies to payday loans, which are classified as "closed-end" credit, "a type of loan that requires a single payment or succession of payments (also known as [an] 'installment' loan)." Thomas A. Wilson, *The Availability of Statutory Damages Under TILA to Remedy the Sharp Practice of Payday Lenders*, 7 N.C. Banking Inst. 339, 344 (Apr.2003); *see also Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 991 (7th Cir.2000) (payday loans fall under 15 U.S.C. § 1638, "which addresses all consumer loans other than open-end credit plans"), *cert. denied*, 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 27 (2000); Regulation Z, 12 C.F.R. § 226.2(a)(10) (defining "closed-end credit" transactions).

■ Under the authority of TILA, the Federal Reserve Board ("Board") promulgated Regulation Z & Supp. I (Official Staff Interpretations). TILA and Regulation Z are liberally construed in favor of the consumer, and must "be absolutely complied with and strictly enforced." *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir.1989) (quoting *Mars v. Spartanburg Chrysler Plymouth, Inc.*, 713 F.2d 65, 67 (4th Cir.1983)).

##### 2. Types of Available Remedies

■ These statutes and regulations require a seller/creditor to make certain disclosures to protect the consumer. TILA provides remedies to consumers in the form of *statutory* and *actual* damages, even for minor violations of TILA. *Jackson*, 890 F.2d at 120; 15 U.S.C. § 1640 (civil liability). A plaintiff may recover

statutory damages whether or not actual damages are proven. *So. Discount Co. of Ga. v. Whitley (In re Whitley)*, 772 F.2d 815, 817 (11th Cir.1985) (holding that statutory damages must be imposed regardless of the trial court's belief that no actual damages resulted). If the creditor is liable for damages, then reasonable attorney's fees and costs are also awardable to the plaintiff. *See* 15 U.S.C. § 1640(a)(3).[8]

### 3. The Bankruptcy Court's Decision

Here, the bankruptcy court found three violations of TILA and Regulation Z. C–N–A failed to clearly and conspicuously disclose the "finance charge" and "annual percentage rate," in violation of 15 U.S.C. § 1632(a) and Regulation Z, 12 C.F.R. § 226.17(a)(2). These were disclosure "form" violations. (See Appendix for details.)

C–N–A also failed to provide the required disclosures prior to consummation of the transaction, in violation of 15 U.S.C. § 1638(b) and Regulation Z, 12 C.F.R. § 226.17(b). This was a disclosure "timing" violation. (See Appendix for details.)

The bankruptcy court determined that these sections of TILA and Regulation Z did not support an award of statutory damages based on the plain terms of § 1640(a)(2)(A), which provides, in relevant part:

**§ 1640. Civil liability**

(a) Individual or class action for damages; amount of award; factors determining amount of award

*Except as otherwise provided in this section,* any creditor who fails to comply with any requirement imposed under this part,[9] including any requirement under section 1635 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any *actual damage* sustained by such person as a result of the failure;

(2)(A)(I) in the case of an individual action *twice the amount of any finance charge* in connection with the transaction . . . .

. . . .

. . . . *In connection with the disclosures referred to in section 1638 of this title, a creditor shall have a liability determined under paragraph (2) only for failing to comply with the requirements of* section 1635 of this title, or of *paragraph (2) (insofar as it requires a disclosure of the "amount financed"), (3), (4), (5), (6), or (9) of section 1638(a) of this title, or for failing to comply with disclosure requirements under State law* for any term which the Board has determined to be substantially the same in meaning under section 1610(a)(2) of this title as any of the terms referred to in any of those paragraphs of section 1638(a) of this title. . . .

15 U.S.C. § 1640(a) (emphasis supplied).

C–N–A was found to have violated §§ 1632(a) and 1638(b)(1). Neither is included among the enumerated subsections for which statutory damages are available under § 1640(a)(2)(A). In addition, no other subsections contain a damages remedy for a violation of those two subsections.

**8.** This section provides for, "in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, [an award of] the costs of the action, together with a reasonable attorney's fee as determined by the court; . . ." 15 U.S.C. § 1640(a)(3).

**9.** "[T]his part" means Part B of TILA, "Credit Transactions," which contains 19 sections, §§ 1631 to 1649.

*Compare* 15 U.S.C. § 1639(j) (deeming a violation of mortgage lending disclosures a failure under 15 U.S.C. § 1635), and 15 U.S.C. § 1640(a)(4) (providing damages in the case of a material failure to comply with any requirement under section 1639).

The bankruptcy court therefore determined that these sections of TILA and Regulation Z did *not* support an award of *statutory* damages based on the plain terms of § 1640(a)(2). The bankruptcy court relied on the reasoning of the Seventh Circuit's *Brown* decision. In *Brown,* the plaintiff was denied statutory damages for disclosure violations under 15 U.S.C. § 1632, § 1638(a)(8) and § 1638(b)(1), none of which is on the list of violations eligible for statutory damages in § 1640(a). *Brown,* 202 F.3d at 991. *Brown* concluded that § 1640(a) contained a "closed list" of eligible violations because it used the word "only" in the final sentence of the opening paragraph. *Id.*

The Sixth Circuit concurred with the Seventh Circuit's statutory construction in holding that a violation of § 1638(b)(1) did not warrant statutory damages under § 1640(a). *See Baker v. Sunny Chevrolet, Inc.,* 349 F.3d 862, 867–68 (6th Cir.2003), *cert. denied,* 542 U.S. 937, 124 S.Ct. 2908, 159 L.Ed.2d 813 (2004).

These are the only circuit courts which have so far addressed the issue under TILA. Most district courts in other circuits follow *Brown's* reasoning, and there is no Ninth Circuit opinion covering the subject. Trustee contends that the bankruptcy court erred in adopting *Brown* rather than the more expansive interpretation of TILA presented in *Lozada v. Dale Baker Oldsmobile, Inc.,* 145 F.Supp.2d 878 (W.D.Mich.2001). She raises several arguments which she believes were more aptly resolved by *Lozada.*

### 4. *Trustee's Position–Statutory Damages*

#### (a) *General Rule v. Exception*

■ First, Trustee challenges the bankruptcy court's statutory construction, pointing to the "general rule" of § 1640(a) which provides that statutory damages are available for violations of "any requirement imposed under" Part B of TILA, which includes §§ 1631 to 1649. Quoting *Lozada,* Trustee maintains that "[t]he statute therefore presumptively makes available statutory damages unless otherwise excepted." *Lozada,* 145 F.Supp.2d at 886. She maintains that the "exceptions" in the § 1640(a) list are in reverse, *i.e.,* "are stated by way of a positive list of included items under particular subsections, rather than by a list of excluded provisions." *Id.* It "provides a limitation on statutory damages only as described and only within listed subsections," and therefore, "may not be given preeminence over the general provision." *Id.* at 886–87. *See also C.I.R. v. Clark,* 489 U.S. 726, 739, 109 S.Ct. 1455, 103 L.Ed.2d 753 (1989) (the standard approach to statutory construction is to construe an exception narrowly in order to "preserve the primary operation" of the general rule).

■ However, we conclude that the doctrine of statutory construction, which holds that the specific governs the general, makes § 1640(a)'s specific limitations on statutory damages more significant than the general opening statement. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) ("[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one ....") (emphasis deleted; internal quotation marks omitted). Section 1640 plainly limits the recovery of statutory damages to specific violations of the disclo-

sure requirements of § 1638(a).[10] The limiting language of § 1638(a) was added to TILA in 1980 (but was not fully effective until 1982[11]) in order to "restrict the scope of creditor civil liability for statutory penalties to only those disclosures which are of material importance in credit shopping," and not various "technical" violations. S.Rep. No. 368, 96th Cong., 2d Sess. 17, 31, *reprinted in* 1980 U.S.C.C.A.N. 236, 267 ("Truth in Lending Simplification and Reform Act," Pub.L. No. 96–221, § 615(b), 94 Stat. 168, 181 (1980)). In other words, the provision was added to preclude statutory damages for merely technical violations of TILA. *See id.,* 1980 U.S.C.C.A.N. at 252.

### (b) § 1632(a)

■ We now turn to each of the TILA violations for which C–N–A was found to have been liable. First, we look at the requirement to conspicuously disclose the finance charge.

The requirement that certain terms be displayed "more conspicuously" is *not* contained in § 1638(a). For statutory damages to apply it must be.

Section 1632(a), requiring a creditor to disclose the terms "finance charge" and "annual percentage rate" more conspicuously than other terms, was also added by the same 1980 amendments. Prior to the amendments, a "clearly and conspicuously" requirement was only found in Regulation Z. *See* 12 C.F.R. § 226.17(a)(1).

Congress could have included the new § 1632 in the closed list in § 1640(a), but it did not. We should not presume that Congress meant to allow statutory damages for failure to comply with the "more conspicuously" standard when it omitted such a provision.[12]

Relying on *Dixey,* Trustee argues that Ninth Circuit law would support statutory damages for not disclosing the terms "finance charge" and "annual percentage rate" more conspicuously. In *Dixey,* the Ninth Circuit reversed a district court's denial of statutory damages for a bank's failure to emphasize, "more conspicuously," the terms "finance charge" and "annual percentage rate," in compliance with Regulation Z, 12 C.F.R. § 226.6(a) (1981).[13] *Dixey,* 677 F.2d at 751. The Ninth Circuit

---

10. These sections include:
(2) (A) The "amount financed", using that term, which shall be the amount of credit of which the consumer has actual use....
(B) In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed....
(3) The "finance charge", not itemized, using that term.
(4) The finance charge expressed as an "annual percentage rate", using that term....
(5) The sum of the amount financed and the finance charge, which shall be termed the "total of payments".
(6) The number, amount, and due dates or periods of payments scheduled to repay the total of payments.
....
(9) Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type.
15 U.S.C. § 1638(a).

11. *See Dixey v. Idaho First Nat'l Bank,* 677 F.2d 749, 752 (9th Cir.1982).

12. *But see Johnson v. Tele–Cash, Inc.,* 82 F.Supp.2d 264 (D.Del.1999) (presuming that Congress meant to treat a violation of § 1632(a) as a violation of § 1638(a)(3) and (a)(4)), *aff'd in part and rev'd in part on other grounds,* 225 F.3d 366 (3rd Cir.2000).

13. The present 12 C.F.R. § 226.6(a), governing disclosures in open-end credit transactions, does not contain the "more conspicuously" language.

held that these failures were significant and serious violations which warranted damages under the provisions of the former act. However, and importantly, when *Dixey* was being decided, the 1980 amendments had not yet taken effect.

In *dicta*, the Ninth Circuit discussed the amendments (now applicable to this case) in regards to disclosure of these terms and stated:

Suits to impose penalties for minor violations may no longer arise, as the amendments became fully effective on April 1, 1982. It should be noted, however, that under the amended Act, the finance charge and annual percentage rate are among the material terms affecting credit shopping and protected by civil liability. [ ] More importantly, the amendments also incorporate the requirement that the "annual percentage rate" and "finance charge" be more conspicuous in ... § 1632(a)....

*Dixey*, 677 F.2d at 753.

While this statement shows some possible support for Trustee's position that the Ninth Circuit would consider § 1632(a) as "incorporated" into the civil liability of § 1640(a)(2), *Dixey* did not so hold, nor did it undertake an analysis of the amended § 1640. Therefore, we do not believe that *Dixey*, or other pre-amendment case law, controls our decision here.

Trustee has also cited courts in other jurisdictions which routinely granted statutory fees for "more conspicuously" or "clearly and conspicuously" violations. These cases are also unpersuasive. In *Malfa v. Household Bank, F.S.B.*, 825 F.Supp. 1018 (S.D.Fla.1993), *aff'd*, 50 F.3d 1037 (11th Cir.1995) (Table), the issue was whether a violation of § 1632's "more conspicuously" requirement warranted rescission under TILA's provisions, after the statute of limitations had run on an action for damages. *Id.* at 1023. The district

court found that there was no material violation of the disclosure requirements. It stated that such a "technical" violation would give rise to a civil penalty, but "would not warrant the harsh sanction of rescission." *Id.* at 1021.

In another case cited by Trustee, *Leathers v. Peoria Toyota–Volvo*, 824 F.Supp. 155 (C.D.Ill.1993), a car dealer failed to comply with the disclosure requirements regarding its security interest in an automobile, pursuant to § 1638(a)(9) and Regulation Z ("clearly and conspicuously" requirement). Since subsection (a)(9) *is* included on the list of violations for which statutory damages are available, it was not surprising that the court awarded damages under § 1640(a)(2). The violations in this case do not include such a violation as in *Leathers*, and thus that case is distinguishable.

In *United Fed. Savs. & Loan Ass'n of Ill. v. Cook (In re Cook)*, 76 B.R. 661 (Bankr.C.D.Ill.1987), the lender failed to disclose its security interest "clearly and conspicuously" pursuant to Regulation Z, 12 C.F.R. § 226.17(a)(1), and the court awarded statutory damages. The court did not discuss § 1632(a), § 1638(a)(9), nor any other authority for awarding damages. *Cook* is questionable on this point, both in light of the Seventh Circuit's decision in *Brown*, and in its lack of analysis for the conclusion drawn.

### (c) § 1638(b)

■ Next, C–N–A was found to have failed to provide the required disclosures prior to consummation of the transaction, in violation of 15 U.S.C. § 1638(b)(1) and Regulation Z, 12 C.F.R. § 226.17(b). Trustee contends that a violation of this timing requirement for disclosures constituted a complete failure to make the substantive disclosures required by § 1638(a), including those for which statutory dam-

ages are expressly available. Therefore, she maintains that statutory damages should also be available for violations of § 1638(b)(1). As the *Lozada* court stated: "§ 1638(a) disclosures may not be said to be made unless and until they are made in compliance with § 1638(b)(1)." *Lozada,* 145 F.Supp.2d at 889.

This argument is similar to the inclusion argument advanced for the § 1632(a) violation, *viz.,* that a violation of § 1638(b)(1) necessarily results in a violation of § 1638(a)(3)-(6). We find *Brown's* reasoning persuasive in rejecting this argument. There, the Seventh Circuit held that such an interpretation would essentially rewrite the statute and allow all candidates for statutory damages to come in through the "back door":

> [A]ccording to plaintiffs, any violation of § 1632(a) ... or § 1638(b)(1) *also* violates § 1638(a)(3) (which requires the lender to disclose the finance charge), § 1638(a)(4) (which requires the lender to express the finance charge as an annual percentage rate), and so on. Because § 1638(a)(3) and (a)(4) are on the list of violations eligible for statutory damages, plaintiffs say that they must prevail. Yet accepting this argument would destroy the point of § 1640(a). What sense would it make to omit § 1632, § 1638(a)(1), (a)(2) (in part), (a)(7), (a)(8), (a)(10), (a)(11), (a)(12), and all of § 1638(b), (c), and (d) from the candidates for statutory damages if they came in through the back door on the theory that all formal shortcomings infect the disclosures of the items that *are* on the list? Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a).

*Brown,* 202 F.3d at 991; *accord Baker,* 349 F.3d at 873 (concurring op.)

Section 1638(a) tells the lender *what* has to be disclosed, while § 1638(b) tells the lender *how and when* to disclose it. Congress structured these requirements separately. The plain language of § 1640(a) excepts violations of the form and timing requirements from statutory damages. This language in the 1980 amendment to TILA was intended "to curtail damages awards for picky and inconsequential formal errors." *Brown,* 202 F.3d at 991 (citing the Truth in Lending Simplification and Reform Act, Pub.L. 96–221, 94 Stat. 132, 168 (1980)). Judge Easterbrook observed in *Brown* that "[i]t would hardly be appropriate to undo Congress' decision by reading matters of form into the substantive provisions for which statutory damages are authorized." *Id.*

Trustee's assertion that *Lozada,* a Michigan district court case, should govern is unpersuasive, especially in light of the fact that its own Sixth Circuit has chosen not to follow its holding. In *Baker,* the defendants, following *Lozada,* argued that a violation of § 1638(b)'s form and timing disclosures should not be an independent violation, but rather it should be read to apply to each subsection of § 1638(a), thereby implicating statutory damages for those relevant subsections. The Sixth Circuit concluded that § 1638(b) was a separate requirement, meaning that the § 1638(a) enumerated items might be disclosed and yet *not* be in the form required by the Regulation Z and § 1638(b)(1), which is not subject to an action for statutory damages but, rather, one for actual damages. *Baker,* 349 F.3d at 869.

Trustee also posits the alternative holding of *Lozada, viz.,* that the 1638(b)(1) form and timing requirements are not "disclosures" and, therefore, to the extent that § 1640(a)(2) limits statutory damages to certain disclosure violations of

§ 1638(a), such restriction is inapplicable to § 1638(b). According to this construction, a violation of § 1638(b)(1) would fall within the "general rule" that a creditor who violates TILA is liable for statutory damages. *See Lozada*, 145 F.Supp.2d at 888.

Again, we reject this argument in favor of the statute's plain language. Section 1640(a) refers to "disclosures referred to in section 1638," not "subsection(s) of § 1638." It then limits statutory damages "only for failing to comply with" the enumerated subsections. Clearly, Congress purposely omitted § 1638(b) from the enumerated list.

The cases cited by Trustee as supporting *Lozada* are not persuasive. *Walters v. First State Bank*, 134 F.Supp.2d 778 (W.D.Va.2001) merely followed *Lozada* in awarding statutory damages for a violation of a form and timing violation under 15 U.S.C. § 1638(b)(1) and Regulation Z. *Id.* at 782. *Walters* has not been clearly adopted on that point by any other court. *See, e.g., Floyd v. Sec. Fin. Corp. of Nev.*, 181 F.Supp.2d 1137, 1141–42 (D.Nev.2001) (following *Walters* as to liability, but with no discussion of damages); *Kilbourn v. Candy Ford–Mercury, Inc.*, 209 F.R.D. 121, 125–28 (W.D.Mich.2002) (agreeing with *Walters* that a violation occurred under similar facts, but rejecting the customer's claim for statutory damages).

*Daenzer v. Wayland Ford, Inc.*, 193 F.Supp.2d 1030, 1036 (W.D.Mich.2002) followed *Lozada*, but there was a split in that district, and *Daenzer* has been disapproved by the Sixth Circuit. *See Baker*, 349 F.3d at 867 [14]; *see also Kilbourn*, 209 F.R.D. at 125–28, *supra*.

Finally, in *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602 (S.D.Fla. 2003), the district court granted the plaintiffs' motion for class certification and, only *in dictum*, tentatively aligned itself with *Lozada*, while noting that plaintiffs also alleged claims for § 1638(a)(2), (3), and (4), which fall squarely within the enumerated provisions for statutory damages in § 1640. *Id.* at 606–07.

### (d) Regulation Z

Finally, Trustee contends that violations of Regulation Z are separate requirements not mentioned in § 1640(a) and violations thereof are entitled to statutory damages under the general provision.

Specifically, Regulation Z, 12 C.F.R. § 226.17(b) requires that "[t]he creditor shall make disclosures before consummation of the transaction." This regulation implements § 1638(b) of TILA, which provides, in part, that "the disclosures required under subsection (a) of this section shall be made before the credit is extended." 15 U.S.C. § 1638(b)(1).

Regulation Z, 12 C.F.R. § 226.17(a)(2) requires, in pertinent part, that "[t]he terms *finance charge* and *annual percentage rate* ... shall be more conspicuous than any other disclosure ...." This regulation implements the provision in § 1632(a) which states: "The terms 'annual percentage rate' and 'finance charge' shall be disclosed more conspicuously than other terms...." 15 U.S.C. § 1632(a).

Regulation Z is the implementing regulation for TILA. Congress expressly delegated to the Board the authority to prescribe regulations containing "such classifications, differentiations, or other provisions," as, in its judgment, "are nec-

**14.** The Sixth Circuit also reversed a district court for the Western District of Michigan which had awarded statutory damages based on the res judicata effect of *Daenzer*. *See* *Dykstra v. Wayland Ford, Inc.*, 134 Fed.Appx. 911, 916–17 (6th Cir.2005) (mem.) (holding that *Daenzer* was erroneous in light of *Baker*).

essary or proper to effectuate the purposes of [TILA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith." 15 U.S.C. § 1604(a). Conflicts between Regulation Z and TILA sometimes arise. One case illustrates the interplay of TILA and Regulation Z.

In *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004), the issue was whether the overlimit charge was included in the term "finance charge," under § 1605(a), and thus subject to the disclosure requirements for finance charges in § 1637(a). The creditor, noting that Regulation Z, 12 C.F.R. § 226.4(c)(2), expressly excluded such a charge, believed its compliance with the regulation sufficed for disclosure purposes.

The Supreme Court held that § 1605(a) was ambiguous regarding an overlimit fee, and that Regulation Z "filled the gap" by "setting forth a clear, easy to apply (and easy to enforce) rule that highlights the charges the Board determined to be most relevant to a consumer's credit decisions." *Household Credit*, 541 U.S. at 239, 245, 124 S.Ct. 1741. Since the creditor had followed the regulation, the Court held it was not liable for relief under TILA.

The Court's reasoning was based on its healthy respect for the expansive authority delegated to the Board by Congress to enact appropriate regulations to advance the meaningful disclosure purposes of TILA. *Id.* at 235, 124 S.Ct. 1741. The Board's authority to issue "binding regulations" was undisputed. *Id.* at 238, 124 S.Ct. 1741. The Court concluded that in the case of a genuine conflict between TILA and Regulation Z, then "courts, as well as the agency, 'must give effect to the unambiguously expressed intent of Congress.'" *Id.* at 239, 124 S.Ct. 1741 (citation omitted). However, if there is an explicit "gap" in the statute, then "the agency's regulation is to be 'given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (citation omitted).

Thus, as this case illustrates, violations of either Regulation Z or its *corresponding* TILA disclosure provisions will warrant damages in accordance with 15 U.S.C. § 1640(a)(2). Here, we do not need to reach the question of whether a violation of Regulation Z warrants statutory damages because there have been no allegations made that the violations of TILA and its corresponding regulations were inconsistent. Therefore, Trustee's argument for civil liability based on Regulation Z is simply misplaced.[15]

In summary, we hold that the violations by C–N–A did not fall within the provisions available for statutory damages, and the bankruptcy court correctly declined to award them. On this issue, we affirm the bankruptcy court.

### B. Actual Damages

■■■ Section 1640(a)(1) of TILA also provides for any *actual* damages sustained by a person as a result of a creditor's failure to comply with any requirement imposed under Part B.

The Ninth Circuit has adopted the majority rule that "detrimental reliance" must be demonstrated in order to recover actual damages for a TILA disclosure vio-

---

**15.** To the extent that the Supreme Court held, *under pre–1980 law,* that noncompliance with a regulation, standing alone, warranted a civil penalty, it was not inconsistent with *Household Credit*. In *Mourning v. Family Pubs. Serv., Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), the subject requirement was found only in the regulation, and the Court held that the regulation "relieve[d] Congress of the impossible burden of drafting a code explicitly covering every conceivable future problem." *Id.* at 376, 93 S.Ct. 1652.

lation. *Gold Country Lenders v. Smith (In re Smith)*, 289 F.3d 1155, 1157 (9th Cir.2002). In bankruptcy court, Trustee conceded that she could not prove detrimental reliance. Nonetheless, on appeal, Trustee maintains that the panel is not bound by *Smith* because it was a "short . . . pro se" appeal that was "wrongly decided." Opening Brief 12, Feb. 21, 2006.

We disagree. We are bound by Ninth Circuit precedent. *Wells Fargo Bank, N.A. v. Guy F. Atkinson Co. of Cal. (In re Guy F. Atkinson Co. of Cal.)*, 242 B.R. 497, 502 n. 9 (9th Cir.BAP1999). Therefore, we reject this argument outright and affirm the bankruptcy court's ruling that actual damages were not proven in this case.

## C. Attorney's Fees Under Nevada Law

Trustee contends that she was entitled to an award of her attorney's fees under Nevada law for prevailing on her claim against C–N–A for its violations of TILA, or as a double recovery under Nevada's own consumer protection laws.

The bankruptcy court held that C–N–A did indeed violate the disclosure statutes and regulations, but that these violations were not of a type warranting statutory damages, nor had Trustee proven actual damages. For that reason it denied Trustee's state law claim for statutory damages, actual damages, or attorney's fees.

Trustee's complaint alleged that C–N–A had violated NRS 604.164.3, which lists the requirements for a written loan agreement as including "[d]isclosures required for a similar transaction by the Federal Truth in Lending Act." [16] Apparently, at the time of

the violation, this chapter did not contain a civil remedy section, and Trustee did not cite to one.[17]

Nonetheless, Trustee also contended that she prevailed under TILA and therefore should have been awarded damages and attorney's fees under NRS § 41.600. This statute provides, *inter alia*, that if a victim of *consumer fraud* prevails in an action for a deceptive trade practice, as that term is defined in NRS §§ 598.0915 to 598.0925, then the court shall award the plaintiff: (a) any damages sustained; *and* (b) costs and reasonable attorney's fees. *See* NRS §§ 41. 600(1), (2)(e), & (3).

Section 41.600 does not define a "consumer fraud" action as one under NRS § 604.164 (or even the new NRS § 604A.410). The one "consumer fraud" action cited by Trustee is that brought by a victim of a "deceptive trade practice as defined in" NRS § 598.0923 as a violation of "a state or federal statute or regulation relating to the sale or lease of goods or services." NRS § 598.0923(3).

■■ Trustee's state law claims are unfounded. First, in order to recover under state law for a violation of TILA, Trustee would have to prove that she was the prevailing party in a civil action for either statutory or actual damages, pursuant to the provision for civil liability, 15 U.S.C. § 1640(a). *See* NRS § 41.600(3). She failed to do that. Trustee did not assert an independent basis for, or standing to bring, a civil action under NRS § 604.164, the only statute cited in her complaint. Although in her amended application she

---

**16.** These laws were repealed and renumbered, effective July 1, 2005. The new NRS § 604A.410(2)(g) similarly provides that the written loan agreement must include: "(g) Any other disclosures required under the Truth in Lending Act and Regulation Z or under any other applicable federal or state statute or regulation."

**17.** The 2005 law contains a new section, NRS § 604A.930 entitled "Civil action," which provides that a customer may bring a civil action if a person violates the disclosure provisions of NRS § 604A.410 (formerly NRS § 604.164).

made a request for the entry of default on a "state law claim" under NRS § 41.600 and NRS § 598.0923(3), this request was improper.

■ Second, in order to recover under state law for a violation of state law, Trustee would have had to plead the appropriate statute in her original complaint. A default judgment is not conformable to the pleadings. *See* Fed. R. Bankr.P. 7054/ Fed. R. Civ. P. 54(c) ("A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. *Except as to a party against whom a judgment is entered by default*, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.") (emphasis added). *See also* Fed. R. Bankr.P. 7015/Fed. R. Civ. P. 15(b) (allowing amendments to conform to the evidence adduced at *trial* ).

Thus, we do not need to address whether federal law would allow a double damage recovery, or whether the Nevada laws cited by Trustee would grant attorney's fees to a party who prevails under the federal TILA statute, although we presume these arguments to be correct. *See, e.g.,* 15 U.S.C. § 1610 (providing that TILA does not preempt consistent state consumer protection laws regarding closed-end loan disclosures). Since Trustee failed to make a threshold showing of any statutory or actual damages, or of any other basis for monetary relief, or for such an award or recovery on any independent ground, we can find no error in the bankruptcy court's decision not to allow a monetary recovery to Trustee pursuant to Nevada law. We will therefore affirm the bankruptcy court on that issue.

### D. Attorney's Fees for the Claim Objection

■ Trustee alternatively contends that she was entitled to attorney's fees as

a "private attorney general" because the granting of her claim objection was "the equivalent of a successful counterclaim." Opening Brief 10. This argument is also misplaced.

■ Federal courts follow the "American Rule" for awarding attorney's fees, which is that "the prevailing party may not recover attorney's fees as costs or otherwise." *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 245, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). There are certain recognized exceptions, including bad faith, common benefit, or the vindication of important statutory rights of all citizens, commonly known as a "private attorney general." *Id.* at 246, 95 S.Ct. 1612.

TILA is the very exception. It is a "prophylactic" fee-shifting statute which "creates a system of 'private attorneys general' to aid its enforcement. In order to penalize noncomplying creditors and to deter future violations, the private attorneys general may recover the statutory penalties even if they have not sustained any actual damages or even if the creditors are guilty of only minute deviations from the requirements of [the] TILA and implementing Regulation Z." *Johnson,* 82 F.Supp.2d at 275; *see also Riggs v. Gov't Emp. Fin. Corp.,* 623 F.2d 68, 73 (9th Cir.1980) ("The scheme of the statute . . . is to create a species of 'private attorney general' to participate prominently in enforcement.") (citation omitted).

15 U.S.C. § 1640 provides for, "in the case of any successful action to enforce the foregoing liability [damages] or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee

as determined by the court; ..." 15 U.S.C. § 1640(a)(3).

■ In this case, Trustee should not be allowed to make an "end run" for attorney's fees in the claim objection litigation when she did not obtain damages and, thus, attorney's fees under TILA. Nor is a trustee's successful objection to a proof of claim compensable by an award of fees. We would also question the practice of a trustee's filing of a proof of claim for a non-appearing creditor, objecting to the claim, having the objection proceed unopposed, and then seeking a fee award for the "success" of the "litigation."

Finally, as the Bankruptcy Code is silent on the subject of whether a "prevailing party" on a claim objection is entitled to fees, the "American Rule" applies.[18]

## CONCLUSION

Trustee did not establish her entitlement to statutory damages, actual damages, or attorney's fees under federal or state law, based on C–N–A's violations of TILA. The bankruptcy court's default judgment is therefore **AFFIRMED.**

## APPENDIX

### *Disclosure and Timing Violations: Statutes and Regulations*

**Section 1632(a) provides:**

**§ 1632. Form of disclosure; additional information**

**(a) Information clearly and conspicuously disclosed; "annual percentage rate" and "finance charge"; order of disclosures and use of different terminology**

Information required by this subchapter shall be disclosed clearly and conspicuously, in accordance with regulations of the Board. The terms "annual percentage rate" and "finance charge" shall be disclosed more conspicuously than other terms, data, or information provided in connection with a transaction, except information relating to the identity of the creditor. Except as provided in subsection (c) of this section, regulations of the Board need not require that disclosures pursuant to this subchapter be made in the order set forth in this subchapter and, except as otherwise provided, may permit the use of terminology different from that employed in this subchapter if it conveys substantially the same meaning.

15 U.S.C. § 1632(a).

**Section 1638(b) provides:**

**§ 1638. Transactions other than under an open end credit plan**

. . .

**(b) Form and timing of disclosures; residential mortgage transaction requirements**

(1) Except as otherwise provided in this part, the disclosures required under subsection (a) of this section shall be made before the credit is extended. Except for the disclosures required by subsection (a)(1) of this section, all disclosures required under subsection (a) of this section and any disclosure provided for in subsection (b), (c), or (d) of section 1605 of this title shall be conspicuously segregated from all other terms, data, or information

---

**18.** In addition, as a policy matter, we are concerned as to what value there is for the estate when Trustee charges $7,000 in administrative expense to rid the estate of a $345 claim, which was *filed by Trustee* and then eliminated through default? Indeed, the $90 statutory fee under TILA is only double the amount of interest. We therefore cannot subscribe to such a "cottage industry" of fighting alleged TILA offenses.

provided in connection with a transaction, including any computations or itemization.

15 U.S.C. § 1638(b)(1).

**Regulation Z provides, in pertinent part:**

**§ 226.17 General disclosure requirements.**

(a) *Form of disclosures.*

. . . .

    (2) The terms *finance charge* and *annual percentage rate,* when required to be disclosed under § 226. 18(d) and (e) together with a corresponding amount or percentage rate, shall be more conspicuous than any other disclosure, except the creditor's identity under § 226.18(a).

. . . .

(b) *Time of disclosures.* The creditor shall make disclosures before consummation of the transaction. In certain residential mortgage transactions, special timing requirements are set forth in § 226.19(a). In certain variable-rate transactions, special timing requirements for variable-rate disclosures are set forth in § 226.19(b) and § 226.20(c). In certain transactions involving mail or telephone orders or a series of sales, the timing of disclosures may be delayed in accordance with paragraphs (g) and (h) of this section.

12 C.F.R. § 226.17(a) and (b).